84 P.3d 877 (2003)
119 Wash.App. 855
STATE of Washington, Respondent,
v.
Dereck Anthony NICHOLSON, II, Appellant.
No. 50241-7-I.
Court of Appeals of Washington, Division 1.
November 24, 2003.
Publication Ordered January 13, 2004.
*878 Cheryl Aza, Washington Appellate Project, Seattle, WA, for Appellant.
Dennis John McCurdy, Julie Anne Kays, King Co. Pros Office, Seattle, WA, for Respondent.
APPELWICK, J.
Dereck Anthony Nicholson was convicted of one count of assault of a child in the second degree and one count of imprisonment-domestic violence. He appeals his conviction for second degree assault of a child with a deadly weapon on the grounds that there was insufficient evidence to prove the elements of common law assault, and that the jury was improperly instructed on the elements of common law assault. We reverse his conviction for second degree assault of a child with a deadly weapon and remand for a new trial.

FACTS
The factual record is based on testimony by Officer Vittorio Mangione and Officer Molly McBride, of the Bellevue Police Department, both of whom responded to the 911 call at the Nicholson residence. Neither Joan Nicholson (Joan), the mother of T.N., the 20-month-old victim in this assault case, nor Dereck Nicholson (Nicholson), testified at trial.
Shortly after Joan and Nicholson began arguing on October 3, 2001, their 20-month-old son, T.N., began crying. The couple's argument escalated after Nicholson screamed, "Shut up, you fucking baby." Joan told Nicholson not to speak to the baby that way. Nicholson then blocked Joan's repeated attempts to leave the house. When Joan put T.N. down to call 911, Nicholson grabbed T.N., got a knife from the kitchen and walked with the child to the family room. While Joan was on the phone calling 911, Nicholson said to her, "Look what I have," at which point she witnessed Nicholson holding T.N. under the armpits and placing the knife blade close to T.N.'s bare stomach.
It is unclear how many times Joan dialed 911, but it is clear that the dispatcher recorded multiple phone calls. On the 911 tape, a female voice identified as Joan's can be heard crying and yelling, "Put the knife down," and "Give me back my baby." T.N. is not heard crying on the 911 tape until after Nicholson put him down and began talking to the 911 dispatcher.
The 911 dispatcher sent police officers to the Nicholson residence. As Officer Mangione approached the Nicholson residence, while still in his car he heard a female screaming from inside the Nicholson house, "Put my son down, he's got a knife." Very shortly after parking his car, Officer Mangione observed Joan running out of the house towards him. She was hysterically yelling and crying, stating that her husband had their son in his arms and was holding a knife to his belly. Officer Mangione described Joan's demeanor as hysterical. He then walked into the house, where he saw Nicholson sitting "calm[ly]" on the couch, without a knife, holding T.N. T.N. was "crying and screaming." Officer Mangione described him as "very, very upset." The knife blade was later found in the kitchen sink and preserved as evidence. Officer Mangione testified that the knife blade was about 7- or 8-inches long.
Officer McBride, who had also responded to the call, described Joan as "hysterical" and crying so hard that it was difficult to understand what she was trying to say. She testified that Joan was distraught and it was therefore difficult to get information from her for the police report.
Nicholson was charged with one count of assault of a child in the second degree and one count of imprisonment-domestic violence. T.N. was the only victim listed in the charging papers.
At trial, the defense counsel made a half-time motion to dismiss the second degree assault of a child charge on the grounds that there was insufficient evidence for a reasonable juror to find Nicholson guilty of the crime. His objection rested in part on the theory apparent in the prosecutor's closing argument that assault could be found if Joan, a third party who was not listed as the victim in the charging papers, was placed in fear and apprehension, in lieu of T.N. being placed in fear and apprehension. The court *879 denied the defense counsel's motion to dismiss and agreed with the prosecutor that the fear and apprehension element of common law assault was met if Joan, as T.N.'s mother, suffered fear and apprehension. In his closing argument, the prosecutor argued that Nicholson's conduct had "creat[ed] [in her], Joan Nicholson, th[at] reasonable apprehension and ... fear of bodily injury."
The trial court instructed the jury on all three definitions of assault used in the state of Washington. The jury instructions did not include an instruction stating that for the fear and apprehension element of common law assault to be met, they would need to find that T.N., not Joan, was fearful and apprehensive of bodily injury. The jury returned a verdict form finding Nicholson guilty of one count of assault of a child in the second degree with a deadly weapon enhancement and one count of imprisonment-domestic violence. He appeals.

ANALYSIS
I. Standard of Review
"`The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. A claim of sufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.' "State v. Romero, 113 Wash.App. 779, 797, 54 P.3d 1255 (2002) (quoting State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992)).
Questions of law are reviewed de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).
II. Conviction for Second Degree Assault of a Child
Nicholson asserts that his conviction for second degree assault of a child must be reversed because the prosecutor's closing argument and instructions to the jury led the jury to believe that the apprehension and fear element of common law assault was met if they found that Nicholson had caused the victim's mother, Joan, fear and apprehension.
The due process clause of the United States and Washington State Constitutions require proof beyond a reasonable doubt "`of every fact necessary to constitute the crime with which he is charged.'" State v. Byrd, 72 Wash.App. 774, 782, 868 P.2d 158 (1994) (quoting In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).
In Washington, an individual commits second degree assault when "he or she, under circumstances not amounting to assault in the first degree ... [a]ssaults another with a deadly weapon." RCW 9A.36.021. A person commits second degree assault of a child when he or she is over 18 years of age and commits the crime against a child under the age of 13 as defined in RCW 9A.36.021. RCW 9A.36.130. Assault is not defined by statute. Three definitions of assault are used by Washington courts: "(1) at attempt, with unlawful force, to inflict bodily injury upon another [attempted battery]; (2) an unlawful touching with criminal intent [battery]; and (3) putting another in apprehension of harm whether or not the actor actually intends to inflict or is incapable of inflicting that harm [common law assault]." State v. Hupe, 50 Wash.App. 277, 282, 748 P.2d 263 (1988). These definitions are alternative means of committing the crime of assault.
"In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to guilt for the single crime charged. Unanimity is not required, however, as to the means by which the crime was committed so long as substantial evidence supports each alternate means."
Bland, 71 Wash.App. at 353, 860 P.2d 1046 (quoting State v. Kitchen, 110 Wash.2d 403, 410, 756 P.2d 105 (1988)).
If one of the alternate means upon which a charge is based fails and there is only a general verdict, the verdict cannot stand unless the reviewing court can determine that the verdict was founded upon one of the methods with regard to which substantial evidence was introduced.
*880 Bland, 71 Wash.App. at 354, 860 P.2d 1046 (citing State v. Thorpe, 51 Wash.App. 582, 586, 754 P.2d 1050 (1988)).
A. Fear and Apprehension Element of Common Law Assault
We first determine whether any of the three alternate means of assault was unsupported by substantial evidence. Nicholson asserts that the State failed to prove the fear and apprehension element of common law assault because it argued that element was met if Joan, the victim's mother, rather than T.N., the victim himself, was placed in fear and apprehension.
T.N. was the only victim listed in Nicholson's charging papers. At trial, the State argued that the elements of common law assault, the third means of assault, were met if the jury found that Joan, as T.N.'s mother, was placed in fear and apprehension in lieu of T.N. being placed in fear and apprehension. The defense counsel objected and requested that the charge be dismissed because the State could not prove that T.N., the victim, was placed in fear and apprehension. The trial court denied the defense counsel's motion to dismiss the second degree assault charge. It also denied defense counsel's exception to the jury instruction, stating:
You raise a very interesting issue as to whether or not the third [definition] would apply, in that normally the person who is referred to as having fear or apprehension created would be the person who allegedly is being targeted with the deadly weapon. But in a situation in which we're dealing with a child, I do not find, even if it is applied in such a way as to allow the finder of fact to consider the feelings of the parent, that is unnecessarily vague, vague or violative of due process or otherwise improper.
If we had a situation in which an unrelated third party, not a parent, were the other, then I think there would be a very serious issue potentially raised. But in this situation, where we're dealing with a child who is probably not fully competent, under these circumstances it is an appropriate instruction.

(Emphasis added). The defense counsel again objected and requested clarification from the court as to how T.N.'s mother could be considered the subject of the intended apprehension. The court responded:
We are talking about what constitutes reasonable apprehension of fear, and if it is reasonable apprehension and fear in the mother, whether she's called the victim or the baby is called the victim I think is immaterial, because the definition of the alleged crime and the to convict instruction do not necessitate that the fear, if any that is created, be within the person who is the potential direct victim of the assault.

(Emphasis added).
Discussing the common law assault definition during closing, the prosecutor stated:
Now, in this case the act was the defendant's action of holding the knife to [T.N.] with the intent to create in Joan Nicholson the apprehension and fear of bodily injury and which created in her, in Joan Nicholson, that reasonable apprehension and imminent fear of bodily injury. ...
All of that ... goes to show ... that even though the actor did not actually intend to inflict the bodily injury, maybe he didn't, maybe he was just doing it to say to Joan, "I am getting back at you on this one. Look what I've got, I've got [T.N.] and I've got a knife held to his belly."
(Emphasis added).
In response, the defense counsel stated:
[T]he victim of this case is [T.N.]. There's no evidence that [T.N.] had any apprehension and fear of bodily injury, there's no evidence that, as a 20-month-old child he'd even have the capacity to understand that he was inthe possibility of bodily injury. But the [S]tate's suggesting that, oh, no, we're not talking about [T.N.] in this incident, we're talking about the third party, in this case, [Joan] Nicholson. [Joan] Nicholson is not listed among the people who are the object of the assault.
In rebuttal, the State argued:
So I would ask that you reject counsel's argument with respect to the fact that *881 [T.N.] could not be afraid, and what you do have is you have evidence of that fear through Joan Nicholson, through his mom. She's the one that is showing you what's happening that day, what's happening to her son, how fearful she is of what the defendant is capable of.
(Emphasis added).
In essence, the trial court supported the State's argument that the fear and apprehension element could be transferred, that is, it was satisfied if Nicholson placed Joan in fear and apprehension because she was T.N.'s mother. The fact that Joan is the victim's mother is immaterial to whether her fear and apprehension can be imputed to T.N. In Bland, we held that fear and apprehension occurring in a third party rather than the victim are insufficient to support a finding that the fear and apprehension element of common law assault has been met. Bland, 71 Wash.App. at 356, 860 P.2d 1046. The trial court thus erred in permitting the State to argue that the fear and apprehension element of common law assault was met if Joan, the victim's mother, rather than T.N., the victim, was placed in fear and apprehension of bodily harm.
The jury was properly provided with standard jury instructions for second degree assault.[1] The jury verdict stated: "We, the jury, find the defendant ... guilty ... of the crime of Assault of a Child in the Second DegreeDomestic Violence as charged in Count I." The jury instructions permitted the jury to find Nicholson guilty if any of the three alternate means of assault was satisfied. It is unclear from the verdict whether the jury relied upon evidence that Joan's fear and apprehension could be transferred to T.N. to reach its verdict. It would have been error to do so, as a matter of law, and T.N.'s fear and apprehension would not be established by substantial evidence.
If one or more means of the alternative means by which a crime charged can be established is not supported by substantial evidence, the verdict will stand only if the court can determine that the verdict was based on only one of the alternative means, and substantial evidence supported that means. State v. Rivas, 97 Wash.App. 349, 351-52, 984 P.2d 432 (1999); Bland, 71 Wash.App. at 358, 860 P.2d 1046. The State argues substantial evidence supports each alternate means of assault. It also argues that there was substantial evidence that T.N. himself was placed in fear and apprehension. But, the jury verdict simply does not allow us to ascertain that the jury relied upon that evidence of the means of committing assault in reaching its conclusion that Nicholson was guilty of second degree assault of a child. We are therefore unable to "determine that the verdict was founded upon one of the methods with regard to which substantial evidence was introduced." Bland, 71 Wash. App. at 354, 860 P.2d 1046.
We reverse Nicholson's conviction of second degree assault of a child and remand for a new trial.
WE CONCUR: ELLINGTON, KENNEDY, JJ.
NOTES
[1] Jury Instruction 8, stated:

An assault is an intentional touching or striking or cutting of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or cutting is offensive if the touching or striking or cutting would offend an ordinary person who is not unduly sensitive.
An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.