778

[No. 76433-6.  En Banc.]
Argued September 29, 2005.    Decided March 15, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. SARAH JANE SMITH, *Petitioner*.

*Wayne C. Fricke*, for petitioner.

*Gerald A. Horne, Prosecuting Attorney*, and *Michelle Luna-Green* and *Jessie Williams, Deputies*, for respondent.

¶1 ALEXANDER, C.J. — Sarah Smith seeks reversal of her three convictions for second degree assault with a deadly weapon. At trial, the jury was instructed that "[a] person commits the crime of Assault in the Second Degree when under circumstances not amounting to Assault in the First Degree he or she assaults another with a deadly weapon." Clerk's Papers (CP) at 151. The jury was given an additional instruction that set forth the three common law definitions of assault. Smith contends here, as she did at the Court of Appeals, that the definitions constitute alternative means of committing the crime of assault in whichever degree charged and that in order to uphold the jury's unanimous verdict there must be substantial evidence to support each of the three definitions if submitted together in one instruction. The Court of Appeals concluded otherwise, holding that definitional instructions do not create alternative means of committing the crime. That court, therefore, concluded that Smith's constitutional right to a unanimous jury verdict was not violated. We affirm the Court of Appeals and uphold each of Smith's three second degree assault convictions.

I

¶2 On July 16, 2002, Smith and her estranged husband, Anthony, agreed by telephone that Anthony would pick up their two daughters for a visit later that day. Anthony arrived at Smith's house accompanied by his friend, Major Moriels, and Moriels's 12-year-old cousin. After parking the car, Anthony, Moriels, and the 12-year-old entered Smith's open garage. Although it is undisputed that a physical altercation between Smith and Anthony thereafter ensued, there is conflicting testimony about who was the primary aggressor and where the fight took place. In any event, at some point, Smith threatened to shoot Anthony and then retrieved a loaded .25 caliber handgun from her upstairs bedroom. Anthony and his two companions exited the house and returned to the car.

¶3 As the three of them got into the car, Smith appeared on her front porch with the weapon. The 12-year-old spotted the gun and warned the others, "Hurry up. She's got a gun." Verbatim Report of Proceedings (VRP) at 154. Immediately following that warning, Smith disengaged the safety and pulled the trigger.[1] The bullet discharged from Smith's handgun slammed into the vehicle, shattering the front passenger window. Moriels and the child were sprayed with glass. Fortunately, no one was seriously injured. Scared and upset, the three quickly left the scene.

¶4 The State thereafter charged Smith with three counts of first degree assault with a firearm, one count for each person in the car. It alleged, pursuant to RCW 9A.36-.011(1)(a), that each assault was intentionally committed "with a firearm or deadly weapon." CP at 1, 2. At the close of evidence, the jury was instructed that "[a] person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he or she assaults another with a firearm." *Id.* at 141. In addition, the jury was instructed regarding the lesser-degree offense of second degree assault, the instruction reading, "A person commits the crime of Assault in the Second Degree when under circumstances not amounting to Assault in the First Degree he or she assaults another with a deadly weapon." *Id.* at 151. The jury was also given a separate instruction that set forth the common law definitions of assault. It read:

An assault is an intentional touching, striking, cutting, or shooting of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching, striking, cutting, or shooting is offensive, if the touching, striking, cutting, or shooting would offend an ordinary person who is not unduly sensitive.

An assault is also an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it and accompanied with the apparent present

---

[1] Smith testified that she pointed the gun at the ground and it just "went off." VRP at 389. Anthony, Moriels, and the child all testified that Smith aimed the gun directly at the car.

ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

*Id.* at 142.

¶5 The jury returned unanimous, general verdicts finding Smith guilty of three counts of second degree assault with a deadly weapon. The jury also unanimously determined that Smith was armed with a deadly weapon.

¶6 At sentencing, Smith received both an exceptional sentence downward of one day for each assault count, to be served concurrently, based on her " 'incomplete defense' [of self-defense],"[2] and three consecutive 36-month firearm enhancements, for a total of 108 months or nine years. *Id.* at 231. She appealed her convictions on the theory that the State failed to present substantial evidence as to each definition of "assault" for each of the three victims[3] and, thus, she argued, her constitutional right to jury unanimity was compromised.

¶7 Division Two of the Court of Appeals affirmed the convictions, holding that the common law assault definitions do not create alternative means of commission. Because the court held that the definitions of "assault" do not create an alternative means crime, it concluded that it need not reach the sufficiency of the evidence challenge presented on each count of assault. Smith filed a petition for

---

[2] At trial, Smith argued that she acted in self-defense, that she never intended to fire the gun, and that the gun discharged accidentally.

[3] Specifically, Smith contended that the evidence did not support the "apprehension of harm" assault definition. Smith argued there, as she does here, that the evidence does not show that, before she pointed and fired the gun, any one of the three victims did, in fact, experience an apprehension and imminent fear of bodily injury. Rather, she argues that the evidence shows that the three victims experienced fear and apprehension only after the shot was fired. *Accord State v. Bland*, 71 Wn. App. 345, 356, 860 P.2d 1046 (1993).

review with this court. We granted review, limiting it to the issues addressed herein.[4]

## II

¶8 A fundamental protection accorded to a criminal defendant is that a jury of his peers must unanimously agree on guilt. CONST. art. I, § 21; *State v. Stephens*, 93 Wn.2d 186, 607 P.2d 304 (1980). It is well established, however, that when the crime charged can be committed by more than one means, the defendant does not have a right to a unanimous jury determination as to the alleged means used to carry out the charged crime or crimes should the jury be instructed on more than one of those means. *State v. Kitchen*, 110 Wn.2d 403, 410-11, 756 P.2d 105 (1988). But, in order to safeguard the defendant's constitutional right to a unanimous verdict as to the alleged crime, substantial evidence of each of the relied-on alternative means must be presented. Yet, a defendant may not simply point to an instruction or statute that is phrased in the disjunctive in order to trigger a substantial evidence review of her conviction. Likewise, where a disputed instruction involves alternatives that may be characterized as a " 'means within [a] means,' " the constitutional right to a unanimous jury verdict is not implicated and the alternative means doctrine does not apply. *In re Pers. Restraint of Jeffries*, 110 Wn.2d 326, 339, 752 P.2d 1338 (1988) (refusing to accept defendant's claim that the jury should be additionally instructed on the subalternatives of the statutory alternatives at issue).

¶9 Bearing the above principles in mind, resolution of this case requires us to answer two separate, but interrelated, questions. First, we must determine whether the common law definitions of assault, when submitted to a

---

[4] We declined to consider: (1) whether the Court of Appeals erred in holding that Smith's multiple convictions did not violate double jeopardy protections, (2) whether that court erred in affirming the trial court's order that the enhancements run consecutively, and (3) whether the prosecutor improperly commented on Smith's exercise of her Fifth Amendment right to remain silent.

jury in a single and separate definitional instruction, constitute alternative means of committing the crime of assault in whichever degree charged. Second, we must decide whether the case before us is an alternative means case requiring us to find substantial evidence supporting each of the alleged means of commission. We address, in turn, each of these inquiries.

## A. MEANS OF COMMITTING CRIMINAL ASSAULT

¶10 Alternative means crimes are ones that provide that the proscribed criminal conduct may be proved in a variety of ways. As a general rule, such crimes are set forth in a statute stating a single offense, under which are set forth more than one means by which the offense may be committed. *See State v. Arndt*, 87 Wn.2d 374, 384, 553 P.2d 1328 (1976). Criminal assault is just such a crime.

¶11 The legislature has codified four degrees of criminal assault.[5] Between the crimes of first, second, and third degree assault, the legislature has delineated a total of 17 alternative means of commission. *See* RCW 9A.36.011-.031. As promulgated by the legislature, the second degree criminal assault statute articulates a single criminal offense[6] and then provides six separate subsections by which the offense may be committed. RCW 9A.36.021(1)(a)-(f). Each of these six subsections represents an alternative means of committing the crime of second degree assault. *Accord State v. Whitney*, 108 Wn.2d 506, 510-11, 739 P.2d 1150 (1987) (noting that separate subsections of RCW 9A.44.040 provide alternative means by which to commit rape in the first degree); *State v. Stockmyer*, 83 Wn. App. 77, 86, 87, 920 P.2d 1201 (1996) (" 'alternative means' " cases generally involve charges "under a statute which contains several alternative ways of committing one crime, and the defendant has been

---

[5] RCW 9A.36.011 (first degree); RCW 9A.36.021 (second degree); RCW 9A.36.031 (third degree); RCW 9A.36.041 (fourth degree).

[6] *See* RCW 9A.36.021(1): "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree . . . ."

charged with conduct which may fulfill more than one [statutory] alternative"); *State v. Martinez*, 76 Wn. App. 1, 884 P.2d 3 (1994); *State v. Barefield*, 47 Wn. App. 444, 458-59, 735 P.2d 1339 (1987) (separate subsections within RCW 46.61.520 provide alternative means by which to commit the crime of vehicular homicide); *State v. Gillespie*, 41 Wn. App. 640, 643, 705 P.2d 808 (1985) (separate subsections within RCW 9A.56.020 provide alternative means by which to commit first degree theft).

■ ■ ¶12 In *State v. Linehan*, 147 Wn.2d 638, 56 P.3d 542 (2002), we stated that the alternative means of committing criminal assault are not provided for in the common law definitions, but rather "are provided in the [above] statutes delineating the degree of assault." *Id.* at 647. Notwithstanding our conclusion in that case, Smith argues that jury unanimity principles require that we hold that the uncodified common law assault definitions constitute alternative means of committing assault. We decline to make that holding for two reasons.

¶13 First, we agree with the Court of Appeals' determination in this case that the assault definitional instructions do not create additional alternative means of committing the crime of assault. That holding is consistent with a line of decisions, from our court and the Court of Appeals, holding that the reach of the alternative means doctrine has not been extended to encompass a mere definitional instruction. *See Linehan*, 147 Wn.2d at 646 (citing *State v. Laico*, 97 Wn. App. 759, 763 n.4, 987 P.2d 638 (1999)); *see also State v. Al-Hamdani*, 109 Wn. App. 599, 36 P.3d 1103 (2001) (definition of "mental incapacity" does not create another means by which rape can occur); *State v. Marko*, 107 Wn. App. 215, 220, 27 P.3d 228 (2001) (definitions of "threat" do not constitute alternative means of the crime of intimidating a witness); *State v. Garvin*, 28 Wn. App. 82, 85, 621 P.2d 215 (1980) (definitions of "threat" do not create alternative means of committing crime of second degree extortion, but merely defined an element of the crime). As applied to the criminal assault charging statutes, the

common law assault definitions merely elaborate upon and clarify the terms "assault" or "assaults," which are used throughout chapter 9A.36 RCW. Therefore, consistent with our prior jurisprudence,[7] we decline to extend the reach of the alternative means doctrine beyond those statutory alternatives already directly provided for by the legislature in the assault charging statutes to encompass the common law assault definitions when submitted as a separate definitional instruction.

¶14 In response to this authority, Smith correctly notes that Divisions One and Three of the Court of Appeals have held that the common law definitions of assault, when submitted as a jury instruction, do create alternative means of committing the crime charged. *See State v. Bland*, 71 Wn. App. 345, 860 P.2d 1046 (1993); *State v. Hupe*, 50 Wn. App. 277, 748 P.2d 263 (1988). We have reviewed these cases and conclude that they do not control the outcome in this case for the following reasons. First, the cases upon which those courts relied to support their conclusion are inapposite to their determination because they primarily involved the question of whether there was sufficient evidence to support statutory alternatives. *See, e.g., Whitney*, 108 Wn.2d 506. Second, the cases are devoid of any ana-

---

[7] We are mindful of our decision in *State v. Joy*, 121 Wn.2d 333, 339, 851 P.2d 654 (1993), in which we held that a jury instruction charging theft by color or aid of deception and theft by exertion of unauthorized control over embezzlement of funds, under RCW 9A.56.020, necessitated a reviewing court to find sufficient evidence to sustain the defendant's convictions. The *Joy* opinion represents the only time this court has determined that a definition, as set forth by statute in that instance, gives rise to alternative means of committing the statutory crime being defined. But, as we later noted in *Linehan*, when holding that "embezzlement" is not an additional alternative means of committing the crime of theft, the structure of the theft statute (in that the means of commission are directly provided for in the definition statute, rather than listed as subsections of the statutes defining the degrees) compelled our holding in *Joy*. *Linehan*, 147 Wn.2d at 647. Given that the legislature has declined to provide a separate (or any) statutory definition of assault since it repealed the separate statutory crimes of assault and battery in 1909, it cannot be said that the structure of the assault statute compels this court to hold as Smith would have us hold. *See State v. Hamilton*, 69 Wash. 561, 564, 125 P. 950 (1912); Laws of 1909, ch. 249, at 906. Rather, as we determined in *Linehan*, the structure of the assault statutes shows that the alternative means of committing criminal assault were provided by the legislature in the statutes delineating the degrees of assault. *Linehan*, 147 Wn.2d at 647.

lytical discussion of why the common law definitions of assault constitute alternative means. Third, a majority of these cases were handed down prior to this court's 2002 determination in *Linehan* that definitions do not create additional alternative means of committing an offense, thereby rendering their authority questionable. Fourth, we have never treated the common law assault definitions as alternative means and are not inclined to do so here. Therefore, we disapprove of the decisions in *Hupe, Bland, State v. Rivas*, 97 Wn. App. 349, 352, 984 P.2d 432 (1999), and *State v. Nicholson*, 119 Wn. App. 855, 84 P.3d 877 (2003), to the extent those cases can be read as endorsing a hard and fast rule that the common law definitions of assault constitute alternative means of committing assault, thereby requiring substantial evidence to support each of the alternative means charged or instructed.

■■ ¶15 Our second reason for holding that the common law definitions of assault, when submitted in a jury instruction as they were in this case, do not constitute alternative means of committing assault is that, properly understood, these definitions merely define an element of the crime charged and, thereby, give rise to a "means within a means" scenario. As stated above, a "means within a means" scenario does not trigger jury unanimity protections. Here, we conclude that the common law assault definitions represent such a "means within a means" because those definitions merely define the element of assault. *Accord State v. Strohm*, 75 Wn. App. 301, 308-09, 879 P.2d 962 (1994) (definition of "traffic" included in jury instruction did not create alternative means of trafficking in stolen property under RCW 9A.82.050(2) because the definition did not add to the criminal statute and its only purpose is to prove understanding of the term "traffic or traffics"); *State v. Winings*, 126 Wn. App. 75, 89-90, 107 P.3d 141 (2005) (definitional instructions do not create alternative means of committing second degree assault that necessitate applying jury unanimity principles).

¶16 In support of our conclusion that this is a means within a means case, we look to the decision in *Laico*, 97

Wn. App. 759. There, Division One of the Court of Appeals was presented with the question of whether the definition of "great bodily harm" constituted an alternative means of committing the crime of assault in the first degree. In that case, similar to the one charge before us here, the State charged the defendant with only one means of committing first degree assault: by means of inflicting "great bodily harm." *Id.* at 761; RCW 9A.36.011(1)(c). In rejecting the defendant's assertion that the three alternative definitions of "great bodily harm" constituted alternative means of committing first degree assault by means of inflicting great bodily harm, the court reasoned that the definition "is merely descriptive of a term that constitutes, among other things, an element of the crime of first degree assault." *Laico*, 97 Wn. App. at 763. To hold otherwise, Division One concluded, would go against the legislature's intent and would raise the spectre of a myriad of instructions and verdict forms.

¶17 Applying Division One's reasoning to the facts of this case shows that, like the definitions of "great bodily harm," the common law definitions of "assault," which we determined in *State v. Davis*, 119 Wn.2d 657, 664, 835 P.2d 1039 (1992), do not constitute essential elements of the crime, are merely descriptive of a term, "assault," that constitutes an element of the crime of second degree assault. Consequently, it follows that, like the definition of "great bodily harm," the common law definition of "assault," when presented in its entirety as a separate jury instruction, gives rise to a "means within a means" situation. As applied to this particular case, the common law definitions of "assault" merely explain the assault by means of a deadly weapon alternative and, therefore, neither require jury unanimity nor have to be supported by substantial evidence on the record.

¶18 Notwithstanding the decision in *Laico*, Smith avers that this is not a "means within a means" case because the definitions of "assault" describe the very crime of assault. In making this assertion, Smith would have us

conclude that a jury's unanimous verdict cannot stand in an assault case such as this unless the alleged additional means (the definitions of "assault") by which the means of assault (here, by deadly weapon) are also supported by substantial evidence. But, as this court noted in *Jeffries*, when presented with (and disavowing) a similar argument, this " 'means within [a] means' argument raises the [troublesome] spectre of a myriad of instructions and verdict forms whenever" a defendant is charged with such a crime. *Jeffries*, 110 Wn.2d at 339; *accord State v. James*, 698 P.2d 1161, 1165 (Alaska 1985) ("By requiring semantic uniformity [in jury verdicts] we encourage overcomplicated instructions and hung juries in cases in which the jurors actually [and unanimously] agree upon the defendant's guilt."). We fail to see how the result Smith urges us to reach advances the two underlying purposes of the alternative means doctrine, which are to prevent jury confusion about what criminal conduct has to be proved beyond a reasonable doubt and to prevent the State from charging every available means authorized under a single criminal statute, lumping them together, and then leaving it to the jury to pick freely among the various means in order to obtain a unanimous verdict. *Accord State v. Petrich*, 101 Wn.2d 566, 569-70, 683 P.2d 173 (1984) (alternative acts case); Darryl K. Brown, *The Jury's Role in Administering Justice in the United States: Judicial Instructions, Defendant Culpability, and Jury Interpretation of Law*, 21 St. Louis U. Pub. L. Rev. 25, 31 (2002) (alternative means rule gives the jury much "leeway to determine how much unanimity on theories or facts that it wants to underlie its [unanimous] verdict").

¶19 In absence of legislative intent to the contrary,[8] we limit the reach of the alternative means doctrine to

---

[8] To this end, we conclude that the legislature's decision to not codify the common law definitions of "assault" indicates its intent to not treat the definitions of "assault" as alternative means of committing criminal assault in whichever degree charged. *Accord Schad v. Arizona*, 501 U.S. 624, 638, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) ("Decisions about what facts are material and what are immaterial, or . . . what 'fact[s] [are] necessary to constitute the crime,' and therefore must be proved individually, and what facts are mere means, represent

those alternative means directly provided for by the assault statutes. Accordingly, we do not apply the doctrine, as Smith urges us to do, to a mere jury instruction setting forth the common law definitions of "assault" as that term is used throughout the charging statutes in chapter 9A.36 RCW.

## B. ALTERNATIVE MEANS CASE

¶20 Having concluded that the common law definitions of "assault," when submitted as a separate jury instruction, do not constitute alternative means of committing the crime of second degree assault, resolution of this particular case becomes straightforward. We would readily agree with Smith that this is an alternative means case requiring sufficient evidence to support each of the alternative means presented to the jury if the State had alleged that Smith committed second degree assault by more than one of the means listed in RCW 9A.36.021(1). However, the record shows plainly that the jury was instructed on only one, not multiple, means of committing second degree assault: assault of another with a deadly weapon under RCW 9A.36-.021(1)(c). Because separate means of committing the crime were not charged or submitted to the jury, this is not an alternative means case, and the Court of Appeals correctly concluded so. Therefore, as the reviewing court, our duty to determine whether sufficient evidence exists to support each separate means presented to the jury has not been triggered. *Accord State v. Randhawa*, 133 Wn.2d 67, 74, 941 P.2d 661 (1997) (In an alternative means case, the threshold test on review is whether sufficient evidence exists to support each of the alternative means presented to the jury.).[9]

---

value choices more appropriately made in the first instance by a [state] legislature . . . ." (second and third alteration in original) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970))). To be sure, this court has never treated the assault definitions as alternative means of committing the crime, and we decline to make that leap here.

[9] The defect in Smith's argument is demonstrated when one contrasts this case with a decision by Division Two of the Court of Appeals in *State v. Richardson*, 24

¶21 In sum, when viewing the alternative means doctrine in its proper light, we find no merit to Smith's assertion that her right to a unanimous jury verdict was compromised because the jury may have been confused about what conduct the State was alleging was criminal. The record shows that the State did not present different factual scenarios as alternatives for proving second degree assault. Rather, it shows that the State maintained at all times at trial that Smith's conduct constituted assault by means of a handgun, a deadly weapon for purposes of second degree assault. Furthermore, the State asserted that Smith's criminal conduct occurred in the span of a few minutes and was intentionally directed, at all times, toward the same three persons.

¶22 Based upon this trial record, any underlying concerns that we may have had that Smith's jury avoided specific factual discussions about what unlawful conduct Smith may or may not have engaged in or concern that the jury did not fairly consider the elements of second degree assault by means of a deadly weapon, have been put to rest by the separate "to convict" and assault definition jury instructions, by the unanimous guilty verdict on the second

Wn. App. 302, 600 P.2d 696 (1979). In that case, the defendant was convicted after jury trial for second degree assault under former RCW 9A.36.020(1) (1975). On appeal, the defendant argued that the trial court's instruction setting forth three alternative means of assault as delineated in subsections (b), (c), and (e) of the statute denied him his right to a unanimous jury verdict. The Court of Appeals agreed that the jury instruction set forth alternative "modes" for committing the single crime of second degree assault. *Id.* at 304. However, it affirmed the conviction and determined that Richardson's right to a unanimous verdict was not compromised because "there [was] substantial evidence to support a conviction on each of the [three] alternative modes" submitted. *Id.* at 305. The circumstances leading the reviewing court in *Richardson* to conclude it was presented with an alternative means case are not present here—the prosecution did not seek to convict Smith of second degree assault based on two or more ways of committing the crime, and the jury was not instructed on more than one statutory means. *See also State v. Gallo*, 20 Wn. App. 717, 730, 582 P.2d 558 (1978) (first degree assault statute provided a single offense that may be committed by various means; jury was instructed on multiple means (firearm, deadly weapon, means likely to produce death), but there was no constitutional error because each means submitted to jury was supported by substantial evidence).

degree assault charges alone, and by the unanimous return on the deadly weapon special verdict. Under the factual circumstances of this case, the record does not support Smith's assertion that she was denied her Washington Constitution article I, section 21 right to jury unanimity on the question of her guilt or innocence. This is because, under the trial court's instructions and the verdict forms submitted for its deliberation, Smith's jury not only had to unanimously agree as to Smith's guilt but it also had to unanimously agree to the one means of committing second degree assault presented for its consideration—assault by means of a deadly weapon. Consequently, we determine that the jury could not have been misled as to or confused about the unanimity requirement, and the guilty verdicts were clearly premised on the jury finding that Smith committed one means of committing the offense of criminal assault in the second degree. Therefore, we uphold each of Smith's three assault convictions.

## III

¶23 Smith's jury was not instructed on more than one statutory means of committing the crime of assault in the second degree. Thus, this is not an alternative means case. Furthermore, the jury returned a unanimous guilty verdict on the three offenses of second degree assault with a deadly weapon. Consequently, we hold that Smith's constitutional right to a unanimous jury verdict was neither implicated nor compromised.

¶24 Additionally, we hold that the alternative means doctrine does not extend to the common law assault definitions when submitted as a separate definitional instruction. Given this holding, it follows that we do not reach Smith's additional contention that the evidence in this case is insufficient to support her three convictions under each of the three alleged alternative definitional means of committing assault.

¶25 The Court of Appeals is affirmed.

C. Johnson, Madsen, Owens, and J.M. Johnson, JJ., concur.

¶26 Bridge, J. (dissenting) — The majority today disregards our prior case law and extensive Court of Appeals precedent distinguishing definitions of *terms* (which do not create alternate means of committing an offense) from definitions of the *crime* (which do). But I believe that this is an important distinction to maintain. I would reverse the Court of Appeals and hold that the common law assault definitions create alternative means of committing assault.

¶27 An alternative means crime is one which allows for the same criminal result to be accomplished in a variety of ways. Most such crimes are defined by statute; in Washington, assault is not. Instead, we look to the common law and define "assault" as either (1) intentional harmful or injurious contact (actual battery); (2) intentionally attempting harmful or injurious contact (attempted battery); or (3) intentionally causing fear and apprehension of imminent harm in another whether one intends actual harm or not (assault or "fear assault"). *State v. Wilson*, 125 Wn.2d 212, 217-18, 883 P.2d 320 (1994).

¶28 It is well settled that in an alternative means case a criminal defendant does not have the right to a unanimous jury determination as to the *particular* means used to carry out a crime. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988). However, in order to safeguard the defendant's right to a unanimous verdict as to the crime, substantial evidence of each of the *relied on* alternative means must be presented. *Id.* But a defendant may not simply point to an instruction or statute that is phrased in the disjunctive in order to trigger a substantial evidence review of her conviction. Likewise, where a disputed instruction involves an alternative that may be characterized as a " 'means within [a] means,' " the alternative means doctrine does not apply. *In re Pers. Restraint of Jeffries*, 110 Wn.2d 326, 339-40, 752 P.2d 1338 (1988) (refusing to accept defendant's claim that

jury should be additionally instructed on the subalternatives of the statutory alternatives at issue).[10]

¶29 The majority interprets Washington case law as unequivocally holding that definitional instructions do not create alternate means of committing assault. In doing so, it avoids an analysis of the precedential ambiguity that currently exists in the determination of what definitions may constitute alternative means and which do not. We have held that definition statutes actually defining the crime may do so in "terms of alternative means." *State v. Linehan*, 147 Wn.2d 638, 648, 56 P.3d 542 (2002) (acknowledging that the statutory definitions of theft create alternative means of committing the crime of theft). Such definitions create an alternative means crime, as opposed to definition statutes that simply *explain* the alternatives. *Id.* I would recognize a distinction between definitions which I will call "fundamental" definitions, i.e., those where the definition *is* the crime, and those which I will call "explanatory" definitions, i.e., those where the definition clarifies terminology or an element of the crime.[11] Fundamental definitions may constitute alternative means; explanatory definitions do not.

¶30 Applying this analytical framework here, the common law definitions of "assault" cannot be considered ex-

---

[10] *Recognizing an extension of this limitation to the alternative means doctrine,* we have observed that "[d]efinition statutes do not create additional alternative means of committing an offense." *State v. Linehan*, 147 Wn.2d 638, 646, 56 P.3d 542 (2002). Like a means within a means, definitions within definitions merely "elaborate upon various terms or words" within a crime. *Id.* at 648. But we also recognize that statutes *defining* a crime *do* provide alternative means of committing theft. *Id.* at 645.

[11] Thus, I would distinguish our observation in *Linehan* that "[d]efinition statutes *do not create additional alternative means of committing an offense.*" 147 Wn.2d at 646. The definitions we considered there were explanatory definitions, not fundamental definitions. As noted elsewhere in *Linehan*, we *do* recognize that the definitions of the crime of theft create alternative means of committing theft. *Id.* at 645. The majority offers *Linehan* as binding authority for the proposition that the common law definitions of "assault" do not create alternative means. Majority at 785. But the majority cites to dicta in *Linehan*. *Id.* (citing *Linehan*, 147 Wn.2d at 647). The question before us today was not before the *Linehan* court as it did not address the common law definitions of "assault." In order to arrive at its conclusion, the majority must not only misread *Linehan*, but it must also dismiss long-standing precedent from our Court of Appeals. Majority at 787.

planatory definitions. Contrary to the assertion of the majority, their purpose goes beyond merely providing detail for the elements of assault. Rather, they are fundamental definitions that identify the very act of assault and do so in alternative ways. Like the definition of "theft" we considered in *Linehan*, the common law assault definitions create alternative means of committing the crime. Regardless of the degree of assault charged, the defendant's actions must necessarily fall into one or more of these definitions.[12] I would therefore hold that the common law assault definitions are alternative means of committing the crime of assault.

¶31 Such a holding is not only consistent with the distinction we have drawn in our case law between what I have called here fundamental definitions and explanatory definitions, it is also consistent with precedent from the Court of Appeals. In both published and unpublished opinions, Division One has held that the common law definitions of "assault" provide alternative means of committing assault, as has Division Three. *See State v. Nicholson*, 119 Wn. App. 855, 860, 84 P.3d 877 (2003); *State v. Putnam*, noted at 122 Wn. App. 1031, 2004 Wash. App. LEXIS 1471, at *5-9; *City of Spokane v. White*, 102 Wn. App. 955, 964-66, 10 P.3d 1095 (2000); *State v. Rivas*, 97 Wn. App. 349, 352, 984 P.2d 432 (1999); *State v. Trujillo*, noted at 87 Wn. App. 1074, 1997 Wash. App. LEXIS 2157, at *7-8; *State v. Bland*, 71 Wn. App. 345, 352-53, 860 P.2d 1046 (1993); *State v. Hupe*, 50 Wn. App. 277, 282, 748 P.2d 263 (1988). Simultaneously, Division One has declined to find alternative means cases exist where the defendant presented a "means within a means" or "definition within a definition" argument. *See State v. Laico*, 97 Wn. App. 759, 762, 987 P.2d 638

---

[12] For this reason, the majority's contention that the sole alternative means of committing the crime of assault are contained in the different degrees of assault is unpersuasive. Majority at 784. Without the basic definition or definitions of "assault," the degrees are meaningless. Moreover, whether the 17 disjunctives contained in the assault statutes constitute alternative means is not a question that has been argued or briefed before this court. Nonetheless, the majority assumes the various disjunctives in the assault statutes constitute the only alternative means of committing assault.

(1999); *State v. Strohm*, 75 Wn. App. 301, 309, 879 P.2d 962 (1994).

¶32 The majority argues that the alternative means doctrine cannot extend to common law definitions but is applicable only where there are statutory alternatives. Majority at 786. I find this argument unpersuasive. While it is true that alternative means crimes have been recognized by courts where there are statutory alternatives, the alternative means doctrine does not appear in any statutory text; it is a court-made doctrine. *See State v. Klimes*, 117 Wn. App. 758, 769, 73 P.3d 416 (2003). The majority presents no authority that forecloses the application of the alternative means doctrine to common law alternatives.[13]

¶33 Accordingly, I would reverse the Court of Appeals and hold that the common law definitions of "assault" constitute alternative means of committing the crime of assault and are thus subject to a substantial evidence review. I dissent.

SANDERS, CHAMBERS, and FAIRHURST, JJ., concur with BRIDGE, J.

---

[13] The majority correctly notes that alternative means are a matter of legislative intent but fails to consider that this is true only insofar as alternative means are differentiated from *separate offenses*. *See Schad v. Arizona*, 501 U.S. 624, 630-46, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (plurality considered whether Arizona murder statute consisted of alternative means or separate offenses, concluding that it is the province of the legislature to determine when "statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime."); *id.* at 636; *State v. Arndt*, 87 Wn.2d 374, 378-79, 553 P.2d 1328 (1976). In order to determine whether the legislature intended statutory alternatives to describe "a single offense committable in more than one way" or describe multiple separate offenses, we consider several factors. *Id.* at 378. It is certainly the province of the legislature to determine what is and is not a crime. But where there is a *definition* which would not in any circumstance be considered a separate offense but may constitute an alternative means of committing the crime, *see Linehan*, 147 Wn.2d at 648, the *Arndt* factors are not helpful.