**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

MAY 14, 2026

*Stgrec, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 14, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 104170-5 |
| Respondent, | ) | |
| v. | ) | |
| | ) | En Banc |
| LEIF BUCK, | ) | |
| Petitioner. | ) | Filed: <u>May 14, 2026</u> |

MADSEN, J.[*]—Leif Buck was convicted of, among other things, interfering with the reporting of domestic violence. RCW 9A.36.150. Division Three of the Court of Appeals concluded that interference is not an alternative means crime. *State v. Buck*, 34 Wn. App. 2d 188, 194, 567 P.3d 54 (2025). This holding expressly conflicts with a Division One case holding the opposite. *State v. Nonog*, 145 Wn. App. 802, 813, 187 P.3d 335 (2008). We granted review to resolve this division split. We hold that interference is not an alternative means crime and affirm Division Three.

---

[*] Justice Barbara Madsen is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

BACKGROUND

Buck shares two children with A.H., and he and A.H. live in separate residences. One summer morning in 2021, A.H. went to Buck's residence to discuss a parenting plan for their children. During the discussion, Buck lunged at A.H., held her on the couch, and then dragged her by her legs across the floor. When A.H. said she was going to call the sheriff, Buck reached into A.H.'s pocket and took her cell phone. A.H. testified that she would have called 911 if Buck had not taken her phone. A.H. told Buck that she would drive to the sheriff's office, and Buck responded that he would not be at the residence when she returned. A.H. then drove to the sheriff's office to report the incident and later went to the emergency room for treatment for bruises and swelling.

The State charged Buck with interfering with reporting domestic violence.[1] At trial, the to-convict instruction stated, in relevant part, that the "following elements of the crime must be proved beyond a reasonable doubt . . . (3) That the defendant prevented or attempted to prevent [A.H.] from calling 911 emergency communication system, or obtaining medical assistance, or making a report to any law enforcement officer." Clerk's Papers at 25; *see* RCW 9A.36.150(1)(b). The jury found Buck guilty.

On appeal, Buck argued that the conviction for interference with reporting domestic violence violated his right to a unanimous jury verdict. *Buck*, 34 Wn. App. 2d at 191. Buck relied on Division One's holding in *Nonog*, 145 Wn. App. at 811-12, to contend that the offense is an alternative means crime and the State presented no

---

[1] Buck was also charged with and convicted of failure to register as a sex offender. Only the interference conviction is at issue in this case.

evidence that Buck prevented or tried to prevent A.H. from seeking medical assistance or making a report to law enforcement. The State argued that interference is not an alternative means crime and *Nonog* was wrongly decided. The State also disclaimed "reliance on an election argument" and conceded that if interference was held to be an alternative means crime, then Buck's right to jury unanimity was violated because evidence was not presented to support the alternative means of committing interference. Br. of Resp't at 29-30 (Wash. Ct. App. No. 39445-0-III (2024)). As a result, the only question before the Court of Appeals was whether interference constitutes an alternative means crime.

Division Three agreed with the State that it is not, noting that the court's conclusion directly conflicted with Division One in *Nonog*. *Buck*, 34 Wn. App. 2d at 191-94. Division Three affirmed Buck's conviction in a partially published opinion. *Id.* at 194. Buck petitioned for review in this court. We granted review to resolve the split between Divisions Three and One. 5 Wn.3d 1001 (2025).

ANALYSIS

Determining whether a statutory offense constitutes an alternative means crime is a matter of statutory interpretation, which we review de novo. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019) (citing *State v. Mayorga DeSantiago*, 149 Wn.2d 402, 417, 68 P.3d 1065 (2003)).

Criminal defendants have the right to a unanimous jury verdict. WASH. CONST. art. I, § 21. "Alternative means crimes" are offenses in which the proscribed criminal conduct may be proved in multiple ways. *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d

3

873 (2007). In these cases, "'an expression of jury unanimity is not required provided each alternative means presented to the jury is supported by sufficient evidence.'" *Barboza-Cortes*, 194 Wn.2d at 643 (quoting *State v. Sandholm*, 184 Wn.2d 726, 732, 364 P.3d 87 (2015)). If insufficient evidence supports one or more of the alternative means presented to the jury, the conviction will not be affirmed. *Id.*[2]

Our review "begins by analyzing the language of the criminal statute at issue." *Sandholm*, 184 Wn.2d at 732 (citing *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014)). Only if the court determines that the statute creates alternative means will it then analyze a challenge to unanimity. *Id.* The legislature has not defined what constitutes an alternative means crime or stated which crimes constitute such offenses. *Owens*, 180 Wn.2d at 96. This court has held that each case "must be determined on its own merits." *Id.*

Interference with reporting domestic violence provides, in relevant part

(1) A person commits the crime of interfering with the reporting of domestic violence if the person:

(a) Commits a crime of domestic violence, as defined in RCW 10.99.020; and

(b) Prevents or attempts to prevent the victim of or a witness to that domestic violence crime from *calling a 911 emergency communication system, obtaining medical assistance, or making a report to any law enforcement official*.

---

[2] Federal courts have not embraced the same approach to alternative means crimes. In *Griffin v. United States*, 502 U.S. 46, 56, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991), the United States Supreme Court held that the Fifth Amendment due process clause does not require a general jury verdict on an alternative means crimes to be set aside provided sufficient evidence supports one of the means. U.S. CONST. amend. V. This court declined to follow *Griffin*. *Barboza-Cortes*, 194 Wn.2d at 650 (González, J., concurring) (citing *State v. Owens*, 180 Wn.2d 90, 95 n.2, 323 P.3d 1030 (2014); *State v. Ortega-Martinez*, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994)).

RCW 9A.36.150 (emphasis added).

The court's inquiry here is whether the quoted language describes "'distinct'" or similar acts. *State v. Shoop*, 1 Wn.3d 532, 538, 528 P.3d 363 (2023) (emphasis omitted) (quoting *State v. Peterson*, 168 Wn.2d 763, 770, 230 P.3d 588 (2010)). If the provision describes distinct acts, then each act more likely constitutes a separate means and a separate crime. *Id.* On the other hand, if the provision contains different definitions or descriptions of *one* criminal act, then that one act is a single "means" and is the single crime. *Id.* (citing *Smith*, 159 Wn.2d at 785-86). In short, "'[t]he more varied the criminal conduct, the more likely the statute describes alternative means.'" *Id*. (alteration in original) (quoting *Sandholm*, 184 Wn.2d at 734). When a statute describes only "'minor nuances inhering in the same act, the more likely the various "alternatives" are merely facets of the same criminal conduct.'" *Id.* (quoting *Sandholm*, 184 Wn.2d at 734).

This court has considered some factors to help distinguish between distinct acts (or means) and minor nuances inhering in the same act. These factors include "'[1] the title of the [statutory] act; [2] whether there is a readily perceivable connection between the various acts set forth; [3] whether the acts are consistent with and not repugnant to each other; [4] and whether the acts may inhere in the same transaction.'" *Id.* at 538-39 (alterations in original) (internal quotation marks omitted) (quoting *State v. Arndt*, 87 Wn.2d 374, 379, 553 P.2d 1328 (1976)).

We have also acknowledged the difficulty in applying our alternative means rules. *Id.* ("Application of these rules can be difficult."); *State v. Woodlyn*, 188 Wn.2d 157, 163, 392 P.3d 1062 (2017) ("[T]he exact requirements of [the alternative means] rule are not

always clear."). For example, the use of the disjunctive "or," the division of a statute into subsections, and different definitions of a crime are each linguistic choices that alone do not control whether an offense is considered an alternative means crime. *Id.*

Relevant to this case, Division One held in *Nonog* that interference with reporting domestic violence is an alternative means crime but later questioned its holding in light of case law from this court.

First, *Nonog* stated that the acts in subsection .150(1)(b) are essential terms. 145 Wn. App. at 812. The court did not, however, explain the meaning of "essential terms" or cite a case supporting essential terms as a dispositive point. Second, the court reasoned that interference is similar to witness tampering (RCW 9A.72.120), which "is regarded as an alternative means crime." *Id.* at 813 (citing *State v. Fleming*, 140 Wn. App. 132, 135-37, 170 P.3d 50 (2007)). As to this point, *Nonog*'s reliance on *Fleming* is misplaced since that opinion offered no analysis of the witness tampering statute. 140 Wn. App. at 137.[3] Finally, in *Nonog*, the State apparently conceded (or at least, did not disagree) that interference was an alternative means crime. Ultimately, whether interference is an alternative means crime was not determinative in *Nonog* because the to-convict instruction limited consideration to one means, which was supported by sufficient evidence, and the court affirmed the conviction. 145 Wn.2d at 813.

---

[3] In a 2022 decision, *State v. Lucas-Vicente*, Division One held witness tampering was an alternative means crime, reasoning that RCW 9A.72.120 used the disjunctive "or" to distinguish conduct, the alternatives were more than mere definitions of essential terms, and each subsection is an essential element describing a distinct way that the defendant commits the crime. 22 Wn. App. 2d 212, 220, 510 P.3d 1006 (2022). The court also stated that witness tampering is similar to interference to further support its conclusion. *Id.* at 220-21.

Division One later expressed doubt about *Nonog*. *State v. Holcomb* acknowledged in the unpublished portion of its decision that "[w]e are uncertain as to the continued efficacy of our analysis in *Nonog* on this question, given our Supreme Court's recent opinions in *Owens*, and . . . *Peterson*, both of which were filed after our opinion in *Nonog*." No. 75245-6-I, slip op. (unpublished portion) at 16 n.11 (Wash. Ct. App. Aug. 7, 2017) (citations omitted), www.courts.wa.gov/opinions/pdf/752456.PDF. *Holcomb* did not address the alternative means analysis because the parties did not raise the issue.

In *Buck*, Division Three directly questioned Division One's reasoning. *Nonog* observed that interference with reporting domestic violence "is culpable only when a victim or witness is trying to report the crime." 145 Wn. App. at 813. Division Three pointed out that this court in *Sandholm* focused on the culpable conduct, rather than the conduct of the victim or witness. 184 Wn.2d at 735 ("In conducting this analysis, less weight is placed on the use of the disjunctive 'or' and more weight on the distinctiveness of the *criminal* conduct." (emphasis added)).

Applying that reasoning here, Division Three stated that prohibited conduct is the defendant preventing (or attempting to prevent) a victim or witness from reporting domestic violence, and the statutory provision contained no nuances in the criminal conduct that differ based on how a report is made. *Buck*, 34 Wn. App. 2d at 193. Thus, the court concluded that interference was not an alternative means offense. *Id.* Division Three was persuaded to depart from *Nonog* based on this court's refocus on criminal conduct in *Sandholm*, which was not available when *Nonog* was decided. *Id.*

Pursuant to our alternative means precedent, we agree with Division Three that subsection .150(1)(b) describes the single crime of interference with reporting domestic violence.

In *Sandholm*, we emphasized that the focus of our alternative means analysis is criminal conduct. 184 Wn.2d at 734. "The more varied the criminal conduct, the more likely the statute describes alternative means." *Id.* The only proscribed conduct in this case is interfering with reporting domestic violence. The purported alternative means in subsection .150(1)(b) concern the actions of a victim or witness and those actions are not criminal. Only the interference with the listed types of reporting is criminalized. The interfering conduct by the defendant may be the same regardless of which method the victim uses to report domestic violence. The critical conduct is the interference itself.

The focus of our alternative means analysis—that is, the defendant's criminal conduct—is rooted in the constitutional right to a unanimous jury verdict. WASH. CONST. art. I, § 21. "Washington law requires a unanimous jury conclusion that the defendant committed the crime charged in the information." *State v. Whitney*, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987). In other words, the jury must agree that the defendant committed the charged crime. *See Woodlyn*, 188 Wn.2d at 163 (noting jury verdicts concern "'what the *defendant* did, or did not, do.'" (emphasis added) (quoting *Richardson v. United States*, 526 U.S. 813, 819, 119 S. Ct. 1707, 143 L. Ed. 2d 985 (1999))). Most of our alternative means case law has examined statutes that directly criminalize a defendant's behavior. *E.g.*, *Owens*, 180 Wn.2d at 96-99 (trafficking in stolen property); *Sandholm*, 184 Wn.2d at 733-36 (driving under the influence). The alleged alternative

means in these cases relate to that behavior as criminal conduct. Here, however, the alleged alternatives do not relate to the *defendant's* conduct but to that of a victim or witness. Thus, Buck's contention that the various ways the acts of a *victim* or *witness* can constitute alternative means does not protect the constitutional right to jury unanimity.

Because the means at issue relate to the conduct of the victim or witness, the *Arndt* factors provide little insight. As we have noted, the central inquiry of our alternative means doctrine is the "distinctiveness of the criminal conduct." *Sandholm*, 184 Wn.2d at 735. Again, as we have noted, much of our alternative means case law has considered statutes criminalizing a *defendant*'s conduct. But the alleged alternative acts in RCW 9A.36.150(1)(b) do not criminalize the defendant's conduct—they concern that of a victim or witness and do not criminalize those acts. Considering the specific inquiry of our alternative means case law, the *Arndt* factors properly apply to statutes criminalizing a defendant's conduct. Thus, we decline to apply them here.

## CONCLUSION

We hold that RCW 9A.36.150(1)(b) defines a single crime of interfering with reporting domestic violence and not three alternative means of committing three separate crimes. *See Shoop*, 1 Wn.3d at 543. Accordingly, we affirm Division Three and overturn Division One's opinion in *Nonog* because it is inconsistent with our alternative means case law.

No. 104170-5

_____
Madsen, J.P.T.

WE CONCUR:

_____
Stephens, C.J.

_____
Johnson, J.

_____
González, J.

_____
Gordon McCloud, J.

_____
Montoya-Lewis, J.

_____
Whitener, J.

_____
Mungia, J.

_____
Melody, J.

10