# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52278-1-II |
| Respondent. | |
| vs. | PUBLISHED OPINION |
| LLEWELLYN ANDREW ROY, | |
| Appellant. | |

MAXA, C.J. – Llewellyn Roy appeals his conviction of second degree animal cruelty. Under RCW 16.52.207(2)(a)[1], a person is guilty of second degree animal cruelty for "fail[ing] to provide the animal with necessary shelter, rest, sanitation, space, or medical attention" and causing unnecessary pain as a result.

Roy argues that RCW 16.52.207(2)(a) provides five alternative means of committing the offense. Because the jury was instructed on all five means and was not instructed that jurors had to be unanimous regarding one of the means, he claims that the State was required to present sufficient evidence to support each means to sustain the conviction.

We hold that RCW 16.52.207(2)(a) provides only a single means of committing the crime of second degree animal cruelty, and the five listed terms are merely different ways of

---

[1] RCW 16.52.207 was amended in 2019. Because those amendments do not materially affect the language relied on by this court, we cite to the current version of the statute.

committing that single means. And we hold that the State presented sufficient evidence to prove one of the ways, failing to provide necessary medical treatment and thereby causing unnecessary or unjustifiable physical pain to his animals. Accordingly, we affirm Roy's conviction.

FACTS

On the evening of July 15, 2017, Roy was arrested on his way to the store and placed in jail. At the time, he owned two mastiffs named Fausto and Azura, a bulldog named Mike, and four parrots.

On July 19, Roy's neighbor, Lisa Wesen, was concerned because she heard barking day and night and noticed that Roy's car had not been home for several days. After knocking on the front door and finding no one home, she went to the back fence and saw the three dogs in the backyard. Fausto was in a kennel on the back porch that was compacted with feces, and the dog had nowhere to stand or lie down. Mike was on the back porch staring at the door and Azura was by the fence barking. The mastiffs looked skinny, had red and goopy eyes, and did not look healthy. Wesen and her husband brought food and water to the dogs and a neighbor shoveled out the kennel. Wesen contacted Jennifer Krueger, an animal control officer for the City of Centralia.

Krueger went to the jail and spoke with Roy and Roy asked her to contact his mother to take care of the animals. When Roy's mother declined to help, Krueger contacted Roy again and he provided Krueger with a key to his home. Krueger also asked him to release the animals to an animal shelter so they could get regular care.

Krueger went to Roy's home with Kyle Stockdale, another animal control officer. Roy's home was very warm and smelled of urine and feces. The parrots had shredded newspaper that

was strewn about the living room. One of the parrots had died. The cages were filthy and the parrots had no food or water.

They found the dogs in the backyard. Krueger described the mastiffs:

They were very, very skinny. You could see every knob on their spine. They had big sores on their elbows where they lay down. Their eyes were -- their eyelids were very swollen with a condition called cherry eye. The female couldn't even hardly see out of her eyes, because the top and bottom lids were so swollen it was just a little slit for her to see.

1 Report of Proceedings at 113. She described the mastiffs as being in bad shape and in pain. Stockdale provided similar testimony. Both mastiffs eventually received medical treatment for their cherry eye as well as for ear and skin infections.

The State charged Roy with first degree and second degree animal cruelty. At trial, the State explained that the first degree charge pertained to the deceased parrot and the second degree charge pertained to the mastiffs.

The to-convict instruction for second degree animal cruelty, tracking the language of RCW 16.52.207(2)(a), required the State to prove that Roy "knowingly, recklessly, or with criminal negligence failed to provide an animal with necessary shelter, rest, sanitation, space, or medical attention." Clerk's Papers at 25. The trial court instructed the jury that it had to be unanimous as to one act of second degree animal cruelty. The court did not instruct the jury that it had to be unanimous regarding the particular ways of committing the crime listed in the to-convict instruction.

The jury could not reach a verdict on first degree animal cruelty pertaining to the parrot and found Roy guilty of second degree animal cruelty pertaining to the mastiffs. Roy appeals his conviction.

ANALYSIS

A.     SECOND DEGREE ANIMAL CRUELTY AND ALTERNATIVE MEANS

Roy argues that RCW 16.52.207(2)(a) provides five alternative means of committing

second degree animal cruelty and that the State did not present sufficient evidence to prove each

means.  We disagree.

1.  Statutory Language

RCW 16.52.207(2)(a) provides:

An owner of an animal is guilty of animal cruelty in the second degree if, under
circumstances not amounting to first degree animal cruelty, the owner knowingly,
recklessly, or with criminal negligence:
(a) Fails to provide the animal with necessary shelter, rest, sanitation, space, or
medical attention and the animal suffers unnecessary or unjustifiable physical pain
as a result of the failure.

RCW 16.52.207(2)(a).  RCW 16.52.207 identifies three other means of committing second degree

animal cruelty: knowingly, recklessly, or with criminal negligence inflicting unnecessary suffering

or pain on an animal, RCW 16.52.207(1)(a); abandoning an animal, RCW 16.52.207(2)(b); and

abandoning an animal when the animal suffers bodily harm or the abandonment creates a risk that

the animal will suffer substantial bodily harm, RCW 16.52.207(2)(c).

Roy claims that RCW 16.52.207(2)(a) identifies five alternative means for committing

the crime under that subsection: knowingly, recklessly, or with criminal negligence failing to

provide (1) shelter, (2) rest, (3) sanitation, (4) space, or (5) medical attention.  The State argues

that subsection (2)(a) identifies only one means of committing animal cruelty, and that the

subsection merely provides five ways of committing that single means.

2.    Alternative Means Doctrine

An alternative means crime is one where the applicable statute provides that the

proscribed criminal conduct can be proved in multiple ways.  *State v. Barboza-Cortes*, 194

Wn.2d 639, 643, 451 P.3d 707 (2019).  As a general rule, the statute identifies a single crime and states that the crime can be committed by more than one means.  *State v. Smith*, 159 Wn.2d 778, 784, 154 P.3d 873 (2007).  Determining whether a statute provides alternative means of committing a crime is a matter of judicial interpretation.  *Barboza-Cortes*, 194 Wn.2d at 643.

The alternative means determination relates to jury unanimity required under article I, section 21 of the Washington Constitution.  *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014).  For an alternative means crime, a defendant is entitled to a unanimous jury determination as to the particular means by which he or she committed the crime.  *Id.*  If there is no express statement of jury unanimity, the State must present sufficient evidence to support each of the alternative means.  *Id.*  But if the statute identifies a single means of committing a crime, unanimity is not required even if there are different ways of establishing that means.  *See Barboza-Cortes*, 194 Wn.2d at 643.

The alternative means analysis focuses on whether the statute describes the crime in terms of separate, distinct acts (alternative means) or in terms of closely related acts that are aspects of one type of conduct (not alternative means).  *State v. Sandholm*, 184 Wn.2d 726, 734. 364 P.3d 87 (2015).

> The more varied the criminal conduct, the more likely the statute describes alternative means.  But when the statute describes minor nuances inhering in the same act, the more likely the various "alternatives" are merely facets of the same criminal conduct.

*Id.*

Two other principles are relevant here.  First, the use of a disjunctive "or" in a list of ways of committing the crime does not necessarily mean that those ways are alternative means.  *Owens*, 180 Wn.2d at 96.  For example, in *Owens* the Supreme Court held that seven terms

5

stated in the disjunctive, read together, constituted a single means rather than seven alternative means for trafficking in stolen property. *Id.* at 98.

Second, a statute that provides a means within a means does not identify an alternative means crime. *Smith*, 159 Wn.2d at 783. "[W]here a disputed instruction involves alternatives that may be characterized as a 'means within [a] means,' the constitutional right to a unanimous jury verdict is not implicated and the alternative means doctrine does not apply." *Id.*

3.    Analysis

In *Barboza-Cortes*, the court addressed RCW 9.41.040(2)(a), which states that a person is guilty of second degree possession of a firearm if the person "owns, has in his or her possession, or has in his or her control any firearm" after having been previously convicted of certain felonies. 194 Wn.2d at 646. The court held that this statute did not establish an alternative means crime. *Id.* The court stated, "While there may be subtle distinctions in aspects of ownership, possession, and control that may be material in other contexts, in the present circumstances that all describe ways of accessing guns." *Id.* Therefore, the terms were merely "nuances inhering in" accessing guns and "facets of the same criminal conduct." *Id.* (quoting *Sandholm*, 184 Wn.2d at 734).

In *Owens*, the court addressed RCW 9A.82.050(1), which prohibits trafficking in stolen property. 180 Wn.2d at 92. The statute provided that a person is guilty of trafficking if he or she " 'knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others.' " *Id.* at 96 (quoting RCW 9A.82.050(1)). The court held that this group of terms *together* identified a single category of criminal conduct – facilitating or participating in the theft of stolen property. *Id.* at 98-99.

Here, shelter, rest, sanitation, space, and medical attention represent different aspects of the basic necessities for an animal's comfortable life. They are not independent, essential elements of the crime. Instead, they are "minor nuances inhering in the same act" and "facets of the same criminal conduct." *Sandholm*, 184 Wn.2d at 734. *Read together*, the listed terms criminalize failing to provide an animal with basic necessities.

We conclude that RCW 16.52.207(2)(a) identifies a single means of committing second degree animal cruelty: failing to provide an animal with the basic necessities of life and thereby causing unnecessary or unjustifiable physical pain. RCW 16.52.207(2)(a) does not describe five alternative means of committing that crime.

B.      SUFFICIENCY OF THE EVIDENCE

Roy argues that his due process rights were violated because the State did not present sufficient evidence to prove all of the means listed in RCW 16.52.207(2)(a) beyond a reasonable doubt. But we have held above that RCW 16.52.207(2)(a) provides a single means of committing second degree animal cruelty, not five alternative means. As noted above, if the statute identifies a single means of committing a crime, unanimity is not required even if there are different ways of establishing that means. *See Barboza-Cortes*, 194 Wn.2d at 643. Therefore, the State had to prove only that Roy failed to provide both mastiffs with necessary shelter, rest, sanitation, space, *or* medical attention.

Here, the State presented evidence that Roy failed to provide both mastiffs with medical attention. Both dogs were emaciated, had sores on their elbows, and had cherry eye. Both also exhibited pain when they moved. Both were later treated for the cherry eye as well as ear and skin infections. And there was evidence that the mastiffs suffered unnecessary or unjustifiable physical pain as a result of the failure to provide medical attention.

We hold that the State provided sufficient evidence that Roy's conduct amounted to second degree animal cruelty under RCW 16.52.207(2)(a).

CONCLUSION

We affirm Roy's conviction of second degree animal cruelty.

_____
MAXA, C.J.

We concur:

_____
SUTTON, J.

_____
GLASGOW, J.