# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>PAUL NOAH ESPINOZA,<br><br>                    Appellant. | DIVISION ONE<br><br>No. 79413-2-I<br><br>PUBLISHED OPINION |

DWYER, J. — Following a jury trial in San Juan County Superior Court, Paul Noah Espinoza was convicted of a single count of felony harassment after making threats to two different people. On appeal, he avers that he was denied his right to a unanimous jury verdict because the State did not elect or designate a victim for the count charged and the jury was given no unanimity instruction. We agree that the trial court erred by not instructing on the need for jury unanimity. Accordingly, we reverse the conviction and remand for a new trial.

I

For several years, Dennis Harshbarger employed Paul Noah Espinoza. In March 2018, while the two men were driving in Harshbarger's truck, Espinoza told Harshbarger that his gun rights had been restored and that he would be getting a gun. Espinoza then stated that when he obtained a gun, he would go to the residence of Chris Wilson and Rina Tappan, and "put some caps in their home." Over the course of a 20 minute conversation, Espinoza also stated that

he would "go over and shoot Chris Wilson." Harshbarger later testified that Espinoza was not laughing, his tone was "matter of fact," he made these statements several times, and he repeated them at work the next day.

Several days later, Harshbarger saw Wilson at Wilson's workplace and "mentioned something to him." Wilson testified that Harshbarger told him that Espinoza "was going to get a weapon and come shoot up [Wilson's] house." Wilson felt intimidated. He repeated this information to his fiancée, Tappan, when he got home that evening. Tappan was "[t]errified," "went into panic mode," and "called the [police right] away." Wilson and Tappan gave statements to the police that evening and stayed in a hotel until the next day when they learned that Espinoza had been arrested.

Wilson, Tappan, and Espinoza had all known each other for many years. Tappan is a close friend of Espinoza's sister. In the past, she had lived with Espinoza as roommates. Espinoza was at one point in a romantic relationship with Tappan's sister. In December 2016, her sister called her and told Tappan that Espinoza had hit her and that she had left the house. She asked Tappan to go to the house and collect some of her belongings. Wilson accompanied Tappan to the house. Tappan and Espinoza argued and Espinoza assaulted Wilson. After this incident, although their families remained close, Tappan attempted to avoid Espinoza. Wilson had no further contact with Espinoza after December 2016.

Espinoza was charged by information with threatening to kill "Christopher R Wilson and/or Rina Sue Tappan." At trial, the State did not elect between the

two victims on the harassment charge.  No unanimity instruction was given.  The
to-convict instruction listed the elements of the crime as follows:

> (1) That on or between 3/1/2018 - 3/7/2018, the defendant
> knowingly threatened to kill Chris Wilson and/or Rina Tappan
> immediately or in the future;
> (2) That the words or conduct of the defendant placed Chris Wilson
> and/or Rina Tappan in reasonable fear that the threat to kill would
> be carried out;
> (3) That the defendant acted without lawful authority; and
> (4) That the threat was made or received in the State of
> Washington.

A jury convicted Espinoza as charged.  He now appeals.

II

Espinoza contends that because the jury was not provided with a
unanimity instruction, and the State did not elect whether Rina Tappan or Chris
Wilson was the victim of the crime, he was denied his right to a unanimous jury
verdict.  Given the manner in which the crime was charged, we agree.

A

Under both the United States and Washington constitutions, a defendant
may not be convicted unless a unanimous jury concludes that the criminal act
charged in the information has been committed.  Ramos v. Louisiana, ___U.S.
___, 140 S. Ct. 1390, 1396-97, 206 L. Ed. 2d 583 (2020); State v. Petrich, 101
Wn.2d 566, 569, 683 P.2d 173 (1984), abrogated on other grounds by State v.
Kitchen, 110 Wn.2d 403, 411, 765 P.2d 105 (1998).  When the State charges
one count of criminal conduct, and presents evidence of more than one criminal
act, there is a danger that a conviction may not be based on a unanimous jury
finding that the defendant committed any given single criminal act.  Kitchen, 110

3

Wn.2d at 756. To ensure that all 12 jurors agree that the same criminal act has been proved beyond a reasonable doubt, either the State must elect a single act or the jurors must be instructed that they must be unanimous in deciding that the same underlying criminal act has been proved beyond a reasonable doubt. Petrich, 101 Wn.2d at 572.

When a trial court does not properly instruct on jury unanimity, the error is harmless only when all rational triers of fact would find that each alleged act was proved beyond a reasonable doubt. Kitchen, 110 Wn.2d at 405-06.

Here, the State charged Espinoza with a single count of felony harassment of "Christopher R Wilson and/or Rina Sue Tappan." Harassing Wilson and harassing Tappan are two distinct crimes that could have been charged in separate counts. See State v. Vidales Morales, 174 Wn. App. 370, 387, 298 P.3d 791 (2013) (holding that the unit of prosecution for felony harassment is determined by the number of victims, not the number of repeated threats); cf. In re Pers. Restraint of France, 199 Wn. App. 822, 839, 401 P.3d 336 (2017) (multiple units of prosecution may exist when the same victim is subjected to different types of threats of harm made at different times and places).

To prove Espinoza guilty of harassing Wilson in violation of RCW 9A.46.020(2)(b)(ii), the State was required to prove (1) that Espinoza threatened Wilson by threatening to kill Wilson or any other person, and (2) that Wilson was placed in reasonable fear that the threat would be carried out. Similarly, to prove Espinoza guilty of harassing Tappan in violation of RCW 9A.46.020(2)(b)(ii), the State was required to prove (1) that Espinoza threatened Tappan by threatening

4

to kill Tappan or any other person, and (2) that Tappan was placed in reasonable fear that the threat would be carried out.

Our Supreme Court has clarified that the words "person threatened," as it appears in the harassment statute, mean the person who is the target of the coercion, intimidation, or humiliation against which the statute intends to protect. State v. J.M., 144 Wn.2d 472, 488, 28 P.3d 720 (2001). The statute contemplates that a person may be threatened by a threat to another—for example, a parent might be threatened by a threat to his or her child. J.M, 144 Wn.2d at 488. For a threat to kill to constitute felony harassment pursuant to RCW 9A.46.020(2)(b)(ii), it is the threatened person who must be placed in reasonable fear that the threat will be carried out.

Here, the State charged two crimes in a single count using "and/or" to identify the victim. Unfortunately, the jury instructions permitted Espinoza to be convicted by a jury that might not have found Espinoza guilty on either charge if the two crimes had been charged separately. For example, the jury instructions permitted the jury to find Espinoza guilty if six jurors believed that only Wilson was threatened while the other six believed that only Tappan was threatened.

Therefore, either an election or a unanimity instruction was required to ensure that all 12 jurors agreed in finding beyond a reasonable doubt that (1) Wilson was the person threatened and placed in reasonable fear, or (2) that Tappan was the person threatened and placed in reasonable fear, or (3) that both Wilson and Tappan were threatened and placed in reasonable fear. A

5

unanimous jury finding on any of these options would comport with the constitutional jury unanimity requirement.

When a verdict is challenged on the basis of evidentiary insufficiency, we employ the well-known standard articulated in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), and adopted by our Supreme Court in State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980). This standard is that a constitutionally sufficient quantum of evidence supports a conviction when "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Green, 94 Wn.2d at 221 (emphasis omitted) (quoting Jackson, 443 U.S. at 319).

A predicate for resort to that standard, however, is the existence of a unanimous jury verdict or trial court finding of guilt. Thus, we do not employ the Jackson standard in determining whether the error herein described was harmless. Indeed, in our analysis, we do not grant the State the benefit of disputed evidence, disputed witness credibility, and the like.

There was, at trial, a factual dispute as to whether Espinoza's threat to kill was directed only at Wilson. Likewise, it was disputed whether Wilson was proved to have felt threatened, given that (unlike Tappan) he did not immediately summon police assistance upon learning of the threat. Similarly, Espinoza's counsel raised questions of the credibility and bias of both Wilson and Tappan given the disharmonious history of Espinoza's prior dealings with the couple. In assessing harmless error, it is the defendant—and not the government—who

6

benefits from these contested matters. We cannot declare that the error was harmless.

Thus, reversal is required.

B

The State nevertheless asserts that it was not required to elect a victim because felony harassment pursuant to RCW 9A.46.020(2)(b)(ii) is an alternative means crime, and both the two ways of proving subsection (2)(b)(ii) and the two possible victims constituted alternative means by which the crime could be committed. In so contending, the State reveals its misapprehension of its own action in charging Espinoza. It did not charge a single alternative means crime in "count one." Rather, it charged two separate crimes in that single count. It was free to do so, but it cannot alter the constitutional imperative of jury unanimity simply by employing an unusual approach to alleging the commission of crimes.

When a defendant is charged with an alternative means crime, the jury need not be unanimous as to the means by which the crime was committed, so long as there is sufficient evidence to support each of the alternative means. State v. Owens, 180 Wn.2d 90, 95-96, 323 P.3d 1030 (2014). If there is not, in order to return a valid verdict, the jury must unanimously convict the defendant of the crime by a means supported by a constitutionally sufficient quantum of evidence. An alternative means crime is one "that provide[s] that the proscribed criminal conduct may be proved in a variety of ways." State v. Smith, 159 Wn.2d 778, 784, 154 P.3d 873 (2007). Absent an expression of legislative intent to the contrary, the alternative means doctrine—as applied to a particular

crime—is limited to those alternative means directly provided for by the statute defining the crime. Smith, 159 Wn.2d at 789-90.

Whether a statute creates an alternative means crime and what those means are present questions of statutory interpretation. Owens, 180 Wn.2d at 96. Although each case must be determined on its own merits, Washington courts have established several principles to guide this analysis. The use of a disjunctive "or" in a list of methods of committing the crime does not necessarily create alternative means of committing the crime, nor does the presence of statutory subsections. State v. Barboza-Cortes, 194 Wn.2d 639, 643-44, 451 P.3d. 707 (2019) (citing State v. Sandholm, 184 Wn.2d 726, 734, 364 P.3d 87 (2015)).

Alternative means describe "'distinct acts that amount to the same crime.'" Barboza-Cortes, 194 Wn.2d at 644 (internal quotation marks omitted) (quoting Sandholm, 184 Wn.2d at 734). When the alleged alternatives are "'minor nuances inhering in the same act,'" these "alternatives" are more accurately categorized as "'facets of the same criminal conduct.'" Barboza-Cortes, 194 Wn.2d at 644 (quoting Sandholm, 184 Wn.2d at 734). Our Supreme Court has explained that the alternative means analysis does not apply to "subalternatives":

> Yet, a defendant may not simply point to an instruction or statute that is phrased in the disjunctive in order to trigger a substantial evidence review of her conviction. Likewise, where a disputed instruction involves alternatives that may be characterized as a "'means within [a] means,'" the constitutional right to a unanimous jury verdict is not implicated and the alternative means doctrine does not apply. In re Pers. Restraint of Jeffries, 110 Wn.2d 326, 339, 752 P.2d 1338 (1988) (refusing to accept defendant's claim

8

that the jury should be additionally instructed on the subalternatives of the statutory alternatives at issue).

Smith, 159 Wn. 2d at 783.

Hence, a statutory provision "that provides a means within a means does not identify an alternative means crime." State v. Roy, 12 Wn. App. 2d 968, 974, 466 P.3d 1142, review denied, 471 P.3d 220 (2020).

Here, the statute at issue is RCW 9A.46.020:

(1) A person is guilty of harassment if:
    (a) Without lawful authority, the person knowingly threatens:
    (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
    (ii) To cause physical damage to the property of a person other than the actor; or
    (iii) To subject the person threatened or any other person to physical confinement or restraint; or
    (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
    (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.
    (2)(a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.
    (b) A person who harasses another is guilty of a class C felony if any of the following apply: (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person; (iii) the person harasses a criminal justice participant who is performing his or her official duties at the time the threat is made; or (iv) the person harasses a criminal justice participant because of an action taken or decision made by the criminal justice participant during the performance of his or her official duties. For the purposes of (b)(iii) and (iv) of this subsection, the fear from the threat must be a fear that a reasonable criminal justice participant

would have under all the circumstances. Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.

(3) Any criminal justice participant who is a target for threats or harassment prohibited under subsection (2)(b)(iii) or (iv) of this section, and any family members residing with him or her, shall be eligible for the address confidentiality program created under RCW 40.24.030.

(4) For purposes of this section, a criminal justice participant includes any (a) federal, state, or local law enforcement agency employee; (b) federal, state, or local prosecuting attorney or deputy prosecuting attorney; (c) staff member of any adult corrections institution or local adult detention facility; (d) staff member of any juvenile corrections institution or local juvenile detention facility; (e) community corrections officer, probation, or parole officer; (f) member of the indeterminate sentence review board; (g) advocate from a crime victim/witness program; or (h) defense attorney.

Subsection (2)(a) of RCW 9A.46.020 designates the base crime set forth in subsection (1) as a gross misdemeanor. The gross misdemeanor crime is an alternative means crime, with the four alternatives set forth in subsection (1)(a)(i)-(iv). Vidales Morales, 174 Wn. App at 377. Subsection (2)(b) provides that in four specific circumstances, the crime in subsection (1) can be elevated to a class C felony. The plain language of the statute makes clear that subsection (2)(b) sets forth the four alternate means of committing class C felony harassment in (i), (ii), (iii), and (iv). The alternatives set forth within subsection (2)(b)(ii) are, therefore, "subalternatives." See Jeffries, 110 Wn.2d at 338; accord Smith, 159 Wn. 2d at 783. Because our jurisprudence does not make special rules applicable to "means within a means" or "subalternatives," the alternative means doctrine does not apply to the subalternatives of subsection (2)(b)(ii). See Jeffries, 110 Wn.2d at 338; accord Smith, 159 Wn.2d at 783.

Consistent with this plain reading analysis, we previously determined that the similar language of RCW 9A.46.020(1)(a)(i), "To cause bodily injury immediately or in the future to the person threatened or to any other person," created a single means of committing the crime, not two alternative means.  State v. G.S., 104 Wn. App. 643, 647-50, 17 P.3d 1221 (2001), abrogated on other grounds by State v. J.M., 144 Wn.2d 472, 28 P.3d 720 (2001).  The G.S. court reasoned that because the legislature had set forth four subsections describing alternative means of committing the base crime of gross misdemeanor harassment, the first subsection did not create two separate means:

> Had the Legislature intended the conduct described in subsection (i) to constitute two alternative means of committing harassment, it could have specifically set forth those alternatives in two separate subsections as it did in the remainder of section (1)(a).  Because the Legislature chose not to do so, we conclude that it intended the threat to cause bodily injury to be one means, not two, of committing the offense.

G.S., 104 Wn. App. at 650.

Similarly, here, had the legislature intended that subsection (2)(b)(ii) create two distinct alternative means, it could have set forth those alternatives in two different subsections, as it did in the rest of subsection (2)(b).  It did not.

Resort to the alternative means doctrine does not rescue the State from its decision not to make an election or seek a unanimity instruction.

Similarly, subsection (2)(b)(ii) does not create "distinct acts," but, rather, facets of the same criminal conduct.  Whether a person threatens someone by threatening to kill them, or by threatening to kill someone else, the conduct is

11

fundamentally the same. Cf. Sandholm, 184 Wn.2d at 735 (holding that which substance or substances cause a person to be under the influence does not change the fundamental nature of the criminal act of driving under the influence).

For these reasons, RCW 9A.46.020(2)(b)(ii), which elevates harassment to a felony, does not itself describe an alternative means crime. The State's contentions to the contrary are without merit.

Neither does the identification of two victims create an alternative means crime. Harassing two individuals in violation of RCW 9A.46.020(2)(b)(ii) does not constitute alternative means of committing a crime but, rather, constitutes the commission of two distinct crimes. Thus, jury unanimity was required as to which crime, if either, Espinoza was proved to have committed. The jury's verdict does not declare the answer to this most important question.[1]

C

Espinoza also contends that our Supreme Court wrongly decided the case of State v. Trey M., 186 Wn.2d 884, 383 P.3d 474 (2016). If that case had been correctly decided, he avers, the evidence adduced at trial would have been insufficient to support the jury's verdict of guilt.

It may be that Espinoza is not the first to find fault with a result of the labors of our State's highest court. As in all other such circumstances, however, we remain bound to follow Supreme Court decisions. State v. Gore, 101 Wn.2d

---

[1] When the State presents evidence of a "continuing course of conduct" comprised of several acts that could be the basis of a criminal charge, the jury need not be unanimous as to which of the defendant's specific acts constituted the crime. State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989). This doctrine encompasses the several threats made by Espinoza. His appellate suggestions to the contrary are without merit.

481, 487, 681 P.2d 227 (1984).  Espinoza's present lament does not establish an entitlement to appellate relief.

Reversed and remanded.

_Dwyer, J._

WE CONCUR:

_Andrus, A.C.J._          _Appelwick, J._