**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 53443-6-II |
| v. | Consolidated with No. 54156-4-II |
| MICHAEL ALLEN SMITH, | |
| Appellant. | PART PUBLISHED OPINION |
| In the Matter of the Personal Restraint of | |
| MICHAEL ALLEN SMITH, | |
| Petitioner. | |

MAXA, J. – Michael Smith appeals his convictions of residential burglary with sexual

motivation and indecent liberties with forcible compulsion. These convictions arose from an

incident in which Smith lawfully entered the home of an acquaintance, HK, but then sexually

assaulted her.

Smith argues based on several Court of Appeals cases that residential burglary is an

offense with two alternative means – unlawfully entering and unlawfully remaining in a

residence – and that his constitutional right to a unanimous jury verdict was violated because

there was insufficient evidence to support a finding that he unlawfully entered HK's house. The

State argues that we should not follow previous Court of Appeals cases and instead hold that

residential burglary is not an alternative means offense, meaning that there is no unanimity issue.

In the alternative, the State argues that Smith's right to a unanimous verdict was not violated

because the State elected to rely only on the "remains unlawfully" means of residential burglary and sufficient evidence supported that means.

In the published portion of this opinion, we hold that (1) notwithstanding previous Court of Appeals cases, residential burglary is not an alternative means offense under the analytical framework of more recent Supreme Court alternative means cases; and (2) even if residential burglary was an alternative means offense, the right to a unanimous verdict was not violated because the prosecutor elected the "remains unlawfully" means and there was substantial evidence of that means. In the unpublished portion, we reject Smith's other arguments as well as his claim in a personal restraint petition (PRP) but remand for the trial court to strike the interest accrual provision for legal financial obligations (LFOs).

Accordingly, we affirm Smith's convictions, but we remand for the trial court to strike the interest accrual provision from his judgment and sentence.

FACTS

*Background*

HK lived in Vancouver with her boyfriend Corey Jones. Smith and Jones were coworkers and close friends. The two men would hang out almost daily and it was normal for Smith to show up at the home unannounced to visit Jones.

Around 8:00 PM on November 17, 2017, Smith visited HK and Jones's house. Smith entered without knocking, which was common for him to do. HK was home alone. Smith appeared intoxicated and did not leave when he learned Jones was not there.

Smith playfully started to wrestle with HK. HK told Smith to stop, but he became angry and tackled her to the ground. While HK tried to fight Smith off, he straddled HK's body, grabbed her breasts and vagina, and tried to penetrate her vagina with his fingers. HK screamed

for Smith to get off her and told him to get out of her house. Smith continued to grab at HK, but HK eventually broke free. HK again yelled at Smith to leave her house. Smith left.

The State charged Smith with residential burglary with sexual motivation and indecent liberties with forcible compulsion.

At trial, the trial court issued a to-convict instruction stating that the State was required to prove that Smith "entered or remained unlawfully in a dwelling." Clerk's Papers (CP) at 26. During closing argument, the prosecutor emphasized that the State was arguing only that Smith remained in HK's home unlawfully, not that he entered unlawfully. The prosecutor noted that it was undisputed that Smith entered HK's house lawfully, but once HK told him to leave he was required to leave.

The jury found Smith guilty of residential burglary with sexual motivation and indecent liberties with forcible compulsion. Smith appeals his convictions and the LFO interest accrual provision in his judgment and sentence.

ANALYSIS

The parties dispute whether residential burglary is an alternative means offense. We conclude that under the analytical framework of more recent Supreme Court cases, residential burglary is not an alternative means offense.

A.    LEGAL PRINCIPLES

An alternative means offense is one where the statute defining the offense provides that the proscribed criminal conduct can be proved in multiple ways. *State v. Barboza-Cortes*, 194 Wn.2d 639, 643, 451 P.3d 707 (2019). Determining whether a statute provides alternative means of committing an offense is a matter of judicial interpretation. *Id.*

In general, a statute that describes an offense in terms of distinct acts will be interpreted as identifying an alternative means offense. *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015). But a statute that describes an offense in terms of closely related acts that are aspects of one type of conduct will be interpreted as not identifying an alternative means offense. *Id.*

> The more varied the criminal conduct, the more likely the statute describes alternative means. But when the statute describes minor nuances inhering in the same act, the more likely the various "alternatives" are merely facets of the same criminal conduct.

*Id.*

The alternative means determination relates to the required unanimous jury verdict under article I, section 21 of the Washington Constitution. *State v. Owens*, 180 Wn.2d 90, 95, 323 P.3d 1030 (2014). For an alternative means offense, a defendant is entitled to a unanimous jury determination as to the specific means by which he or she committed the offense. *Id.* If the jury is not instructed to make an express statement of jury unanimity, the State must present sufficient evidence to support each of the alternative means. *Id.* But if the statute identifies only a single means of committing an offense, no unanimity instruction is required. *Barboza-Cortes*, 194 Wn.2d at 649.

B.     RESIDENTIAL BURGLARY AS AN ALTERNATIVE MEANS OFFENSE

1.     Statutory Language

The starting point of the alternative means analysis is the language of the criminal statute at issue. *Barboza-Cortes*, 194 Wn.2d at 643. RCW 9A.52.025(1) states, "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person *enters or remains unlawfully* in a dwelling other than a vehicle." (Emphasis added.) The statutes defining first degree burglary and second degree burglary contain the same "enters or remains unlawfully" language. RCW 9A.52.020(1); RCW 9A.52.030(1).

9A.52.010(2) contains a definition of the term "enters or remains unlawfully": "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain."

2.    Existing Law

In *State v. Klimes*, Division One of this court addressed RCW 9A.52.030(1), which states that a person is guilty of second degree burglary if the person enters or remains unlawfully in a building other than a vehicle or a dwelling with intent to commit a crime.  117 Wn. App. 758, 764, 73 P.3d 416 (2003).  The court concluded that "enters unlawfully" and "remains unlawfully" constituted alternative means of committing burglary.  *Id.* at 768.  The court noted that " 'enters unlawfully' and 'remains unlawfully' are separate acts, and that a person can enter lawfully but remain unlawfully in some factual circumstances."  *Id.* at 767.

Division One has applied the rule that burglary is an alternative means offense without any additional analysis in multiple cases.  *E.g.*, *State v. Sony*, 184 Wn. App. 496, 500, 337 P.3d 397 (2014); *State v. Allen*, 127 Wn. App. 125, 131, 110 P.3d 849 (2005).  This court applied this rule without analysis 15 years ago.  *State v. Johnson*, 132 Wn. App. 400, 409-10, 132 P.3d 737 (2006).  Division Three also has applied the rule without analysis. *State v. Cordero*, 170 Wn. App. 351, 366, 284 P.3d 773 (2012).

We give respectful consideration to the decisions of other divisions of the Court of Appeals, but we are not bound by those decisions.  *In re Pers. Restraint of Arnold*, 190 Wn.2d 136, 147-49, 154, 410 P.3d 1133 (2018).  And we are not even bound by decisions by different panels within our own division.  *In re Marriage of Snider*, 6 Wn. App. 2d 310, 315, 430 P.3d 726 (2018).  Therefore, we are free to disregard previous Court of Appeals cases if, for example, we believe that the law has changed.

3.    Development of Alternative Means Analysis

In recent years, the Supreme Court has refined the alternative means analysis in a series of cases, including: *State v. Peterson*, 168 Wn.2d 763, 768-69, 230 P.3d 588 (2010); *Owens*, 180 Wn.2d 90; *Sandholm*, 184 Wn.2d 726; and *Barboza-Cortes*, 194 Wn.2d 639.  Significantly, these cases do not agree with the apparent basis for the holding in *Klimes* – that a description in the statute of separate acts necessarily establishes an alternative means offense.  *See Klimes*, 117 Wn. App. at 765-67.

In *Peterson*, the court addressed whether the failure to register as a sex offender statute created an alternative means offense.  168 Wn.2d at 768-71.  The statute described the offense as failing to register (1) after becoming homeless, (2) after moving between fixed residences within a county, and (3) after moving from one county to another.  *Id*. at 770.  The court held that the three different ways of violating the statute did not create an alternative means offense because they merely described the same single act: failure to register as a sex offender after moving.  *Id.*

In *Owens*, the court addressed whether the statute that prohibited trafficking in stolen property created an alternative means offense.  180 Wn.2d at 96-99.  The statute provided that a person was guilty of trafficking if he or she "knowingly initiates, organizes, plans, finances, directs, manages, or supervises the theft of property for sale to others."  RCW 9A.82.050(1).  The court emphasized that this group of terms together " 'relate to different aspects of a single category of criminal conduct – facilitating or participating in the theft of property so that it can be sold.' "  *Owens*, 180 Wn.2d at 98 (quoting *State v. Lindsay*, 177 Wn. App. 233, 241-42, 311 P.3d 61 (2013)).  Similarly, the court stated that "these terms are merely different ways of committing one act, specifically stealing."  *Owens*, 180 Wn.2d at 99.  Therefore, the court concluded that this list of terms constituted a single means, not alternative means.  *Id.*

In *Sandholm*, the court addressed whether the statute that prohibited driving under the influence (DUI) created an alternative means offense. 184 Wn.2d at 732-36. The statute provided that a person is guilty of driving under the influence if he or she drives a vehicle and one of three subsections is satisfied: the person: "within two hours after driving, [has] an alcohol concentration of 0.08 or higher"; is "under the influence of or affected by intoxicating liquor or any drug"; or is "under the combined influence of or affected by intoxicating liquor and any drug." Former RCW 46.61.502(1) (2008). The court stated:

> [T]he DUI statute's "affected by" clauses do not describe multiple, distinct types of conduct that can reasonably be interpreted as creating alternative means. Rather, those portions of the DUI statute contemplate only one type of conduct: driving a vehicle under the "influence of" or while "affected by" certain substances that may impair the driver. Former RCW 46.61.502 (2008). These statutory subsections describe facets of the same conduct, not distinct criminal acts. Whether the defendant is driving under the influence of alcohol, or drugs, or marijuana, or some combination thereof, the defendant's *conduct* is the same – operating a vehicle while under the influence of certain substances.

*Sandholm*, 184 Wn.2d at 735.

In *Barboza-Cortes*, the court addressed whether the statute prohibiting the unlawful possession of a firearm created an alternative means offense. 194 Wn.2d at 643-46. The statute provided that a person is guilty of second degree possession of a firearm if the person "owns, has in his or her possession, or has in his or her control any firearm" after having been previously convicted of certain felonies. RCW 9.41.040(2)(a)(i)[1]. The court stated, "While there may be subtle distinctions in aspects of ownership, possession, and control that may be material in other contexts, in the present circumstances they all describe ways of accessing guns." *Barboza-Cortes*, 194 Wn.2d at 646. The terms were merely " 'nuances inhering in the same [prohibited]

---

[1] RCW 9.41.040 has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

act' – accessing guns" and " 'facets of the same criminal conduct.' " *Id*. (quoting *Sandholm*, 184 Wn.2d at 734). Therefore, the court held that this statute did not establish an alternative means crime. *Id*.[2]

This court applied the analytical framework set forth in those cases to the animal cruelty statute in *State v. Roy*, 12 Wn. App. 2d 968, 466 P.3d 1142, *review denied*, 196 Wn.2d 1004 (2020). That statute stated that a person was guilty of second degree animal cruelty if that person "[f]ails to provide the animal with necessary shelter, rest, sanitation, space, or medical attention" and thereby causes unnecessary pain. RCW 16.52.207(2)(a). The court stated:

> Here, shelter, rest, sanitation, space, and medical attention represent different aspects of the basic necessities for an animal's comfortable life. They are not independent, essential elements of the crime. Instead, they are "minor nuances inhering in the same act" and "facets of the same criminal conduct." *Sandholm*, 184 Wn.2d at 734, 364 P.3d 87. *Read together*, the listed terms criminalize failing to provide an animal with basic necessities.

*Roy*, 12 Wn. App. 2d at 975. The court concluded that there was "a single means of committing second degree animal cruelty: failing to provide an animal with the basic necessities of life and thereby causing unnecessary or unjustifiable physical pain." *Id.*

4.    Updated Analysis

The State argues that the phrase "enters or remains unlawfully" in RCW 9A.52.025(1) does not create an alternative means offense. We agree.

In *Klimes*, the court suggested that entering and remaining unlawfully in a building were alternative means because they were "separate acts."   117 Wn. App. at 767. But under *Owens*, *Sandholm*, and *Barboza-Cortes*, that is not the relevant inquiry.

---

[2] Significantly, the court disapproved of this court's decision in *State v. Holt*, 119 Wn. App. 712, 718, 82 P.3d 688 (2004), which stated without analysis that second degree unlawful possession of a firearm was an alternative means offense. *Barboza-Cortes*, 194 Wn.2d at 646 n.2.

In each of those cases, the applicable statutes described separate acts. *Barboza-Cortes*, 194 Wn.2d at 646 (owning, possessing, and controlling a firearm); *Sandholm*, 184 Wn.2d at 735 (driving while under the influence of three different kinds of intoxicating substances); *Owens*, 180 Wn.2d at 98 (multiple ways of assisting in the theft of property). The Supreme Court has made it clear that an alternative means offense is not created if those separate acts simply represent different aspects of a single type of criminal conduct. *E.g.*, *Barboza-Cortes*, 194 Wn.2d at 646. The focus is on the actual conduct that the applicable statute prohibits. *Id.* (accessing guns); *Sandholm*, 184 Wn.2d at 735 (operating a vehicle while under the influence of certain substances); *Owens*, 180 Wn.2d at 98 (facilitating or participating in the theft of property).

Here, RCW 9A.52.025(1) identifies two separate acts: entering and remaining in a dwelling. But the focus of the statute is the unlawfulness of the defendant's conduct. The actual conduct the statute prohibits is being present in a dwelling *unlawfully*. Entering and remaining are merely " 'nuances inhering in the same [prohibited] act' " and " 'facets of the same criminal conduct.' " *Barboza-Cortes*, 194 Wn.2d at 646 (quoting *Sandholm*, 184 Wn.2d at 734).

This conclusion is consistent with the language of RCW 9A.52.025(1). A person is guilty of residential burglary if the person "enters or remains unlawfully." RCW 9A.52.025(1). This language treats entering and remaining as a single unit, suggesting that they be read together. If the legislature had intended to create an alternative means statute, it presumably would have changed the language to "enters *unlawfully* or remains unlawfully." *See Owens*, 180 Wn.2d at 97-98 (relying on the placement of the word "knowingly" in the applicable statute to support a finding of no alternative means).

9

Similarly, RCW 9A.52.010(2) does not contain separate definitions for "enters unlawfully" and "remains unlawfully." It includes those two acts under a definition of a single term: "enters or remains unlawfully." RCW 9A.52.010(2).

We conclude that RCW 9A.52.025 identifies a single means of committing residential burglary: entering or remaining unlawfully in a dwelling. Therefore, the State was not required to present sufficient evidence to support both unlawfully entering and unlawfully remaining in HK's home. And because it is undisputed that the State provided sufficient evidence that Smith remained unlawfully in HK's home, we reject Smith's unanimity argument.

C.      ELECTION OF MEANS

The State alternatively argues that even if residential burglary was an alternative means offense, Smith's right to a unanimous verdict was not violated here because the State elected to rely only on the "remains unlawfully" means of residential burglary and sufficient evidence supported that means. Smith argues that election does not apply in the context of alternative means offenses. We agree with the State.

1.      Legal Principles

The State relies on *State v. Kitchen*, which stated that to avoid unanimity issues "[w]hen the prosecution presents evidence of several acts that could form the basis of one count charged, *either the State must tell the jury which act to rely on in its deliberations* or the court must instruct the jury to agree on a specific criminal act." 110 Wn.2d 403, 409, 756 P.2d 105 (1988) (emphasis added). However, *Kitchen* addressed the situation where multiple acts could constitute the charged offense, not where the offense could be committed by alternative mans. *See id.* at 410-11.

Smith argues that alternative means cases are different because those means are incorporated in the to-convict instruction. But if election can prevent a unanimity problem in a multiple acts case, we see no reason that election also should not prevent a unanimity problem in an alternative means case.

The State also relies on *State v. Woodlyn*, where the court stated that when sufficient evidence does not support all of the alternative means, "a reviewing court is compelled to reverse a general verdict unless it can '*rule out the possibility* the jury relied on a charge unsupported by sufficient evidence.' " 188 Wn.2d 157, 165, 392 P.3d 1062 (2017) (quoting *State v. Wright*, 165 Wn.2d 783, 803 n.12, 203 P.3d 1027 (2009)). However, *Woodlyn* did not expressly address election by the State.

Smith argues that *Woodlyn* requires some type of formal action by the trial court before a reviewing court can rule out the possibility that the jury relied on some other means. He relies on the statement in Woodlyn that "[a]bsent some form of colloquy or explicit instruction, we cannot assume that every member of the jury relied solely on the supported alternative." *Id.* at 166. But the court made this statement in the context of holding that a complete lack of evidence regarding an unsupported means does not solve a unanimity problem. *Id.* at 165-67. And a clear election by the State that it was relying on only one of the alternative means would allow a reviewing court to rule out the possibility that the jury relied on some other means.

Although the Supreme Court has not addressed election in the alternative means context, Court of Appeals cases have recognized that when sufficient evidence does not support one of the alternatives, the right to a unanimous verdict is implicated only if the State does not elect the means on which it is relying. In *State v. Gonzales*, Division One of this court stated this principle after recognizing previous cases holding that second degree burglary was an alternative

11

means crime: "If the evidence is insufficient to support both means, *either the prosecutor must elect the means supported by the evidence*, or the court must instruct the jury to rely on that means during deliberations." 133 Wn. App. 236, 243, 148 P.3d 1046 (2006) (emphasis added). The court made a similar statement in *Klimes*. 117 Wn. App. at 770.

Division Three also has acknowledged this role for election in the context of alternative means offenses:

> *When the State fails to elect between alternative means*, instructions that do not require unanimity on the same means of committing the criminal act are not required if there is substantial evidence supporting each alternative means presented to the jury.

*State v. Boiko*, 131 Wn. App. 595, 599, 128 P.3d 143 (2006) (emphasis added).

We conclude that if the State expressly elects to rely on only one alternative means to obtain a conviction, the State need not present sufficient evidence of all alternative means in order to avoid violating the defendant's right to a unanimous verdict.[3]

2. Analysis

An election by the State need not be formally pled or incorporated into the information. *State v. Carson*, 184 Wn.2d 207, 227, 357 P.3d 1064 (2015). As long as the election clearly identifies the particular acts on which charges are based, verbally telling the jury of the election during closing argument is sufficient. *Id*. Whether a sufficient election has been made depends upon the facts of each particular case.

Here, the prosecutor made a clear election as to the acts constituting residential burglary. During closing argument, the prosecutor specifically stated:

> The first element is that on November 17, 2017 the defendant entered or remained unlawfully in her house. *And here the issue is that he remained unlawfully. It*

---

[3] Despite this holding, we emphasize that the better course of action is for the State to remove the alternative means that it is not relying on from the to-convict instruction.

*wasn't his entry that was unlawful*. He'd come over like that before. *But it was his remaining after she told him to leave. That's the part that's unlawful*.

The second element is that the entering or remaining was with the intent to commit a crime against a person or property inside.

So *remaining unlawfully*, your instructions 13 tells you about that. *When someone is not invited -- not invited to stay, that is enough*. The defendant was not invited. She repeatedly told him to leave. *He was remaining unlawfully*.

Report of Proceedings (RP) at 330-31 (emphasis added).

In addition, during rebuttal the prosecutor stated:

Now, Defense raises this issue of residential burglary that he came in, and she offered him a drink. *That's undisputed. That's all good and fine*. But guess what, whether she invited him in with open arms or he just walked right in, it doesn't matter. She gets to revoke his invitation at any point.

*He doesn't just get to stay because he got in there successfully, legally initially*. The law recognizes that, that people might be invited into a home, things go sideways, and the law protects people. People have the right to be safe in their homes. [HK] had the right to have this safe space, to tell the defendant to leave, and *the law required him to leave*.

RP at 355 (emphasis added).

We conclude that the prosecutor's closing and rebuttal arguments expressly elected unlawful remaining as the means for which the jury should convict Smith. As stated above, it is undisputed that the State provided sufficient evidence that Smith remained unlawfully in HK's home. Because the State elected the "remains unlawfully" means and that particular means is supported by sufficient evidence, we hold that Smith's right to a unanimous verdict was not violated even if residential burglary was an alternative means offense.

CONCLUSION

We affirm Smith's convictions, but we remand for the trial court to strike the interest accrual provision for nonrestitution LFOs from Smith's judgment and sentence.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we hold that (1) the trial court did not violate Smith's constitutional right to present a defense by excluding evidence of HK's relationship troubles with her boyfriend because that evidence was irrelevant and he was not prevented from arguing his theory of the case, (2) Smith waived his prosecutorial misconduct claim by failing to object when an instruction would have cured any misconduct, (3) the trial court properly exercised its discretion under the antimerger statute to punish both offenses regardless of whether they constituted the same criminal conduct, (4) Smith's PRP claim has no merit, and (5) the interest accrual provision for nonrestitution LFOs should be stricken.

## ADDITIONAL FACTS

*Trial*

At trial, HK testified to the events described in the published portion of this opinion above. In addition, she described how after Smith left her house he returned and yelled at her while she was in the bathtub.

On cross examination, Smith sought to elicit testimony from HK that she was thinking about leaving her relationship with Jones because he was partying and not coming home. Smith argued that this testimony would be relevant support for a motive for HK to fabricate her allegations against Smith because of the possibility that Jones would believe that the incident with Smith was some type of cheating encounter. The trial court ruled that the evidence was inadmissible, stating that the evidence had no probative value regarding HK's motive or potential bias.

14

Andrew Stamper, HK's work colleague, also testified. Stamper testified that after the incident HK appeared emotionally distraught and called out sick a few times. He also testified that HK received a distressing telephone call from Jones in which Jones was upset with her. On cross examination, Smith sought to elicit testimony from Stamper that Jones had accused HK of cheating on him. The court allowed the line of questioning because the State had opened the door. Stamper then testified that, during the phone call, Jones had accused HK of cheating on him.

Smith did not testify. However, he presented the testimony of Andrew Luna, who had spent the day with Smith. Luna testified that Smith dropped him off at his house at around 8:00 PM and that Smith planned to stop by Jones's house to check on him.

*Closing Argument*

During her rebuttal argument, the prosecutor stated:

At the end of the day if you believe beyond a reasonable doubt that this happened, that the defendant sexually assaulted [HK] refusing to leave, *and nothing that defense counsel says shakes your abiding belief in that, your abiding belief in the charges, then that's it*.

RP at 357 (emphasis added). Smith did not object to this statement.

*Sentencing*

At sentencing, Smith argued that his convictions for indecent liberties by forcible compulsion and residential burglary with sexual motivation encompassed the same criminal conduct and asked the court to exercise its discretion under the antimerger statute by merging the convictions for the purpose of his offender score. The State urged the court to apply the antimerger statute, RCW 9A.52.050, to Smith's convictions. The trial court in the exercise of its discretion declined to merge the convictions under the antimerger statute. The court noted that there actually were two instances of burglary – when Smith remained after being told to leave

and when he came back into HK's house when she was in the bathtub. Therefore, the court counted each conviction separately in calculating Smith's offender score.

As part of the sentence, the court imposed mandatory LFOs. The judgment and sentence provided that Smith's LFOs would bear interest until paid in full.

*Smith's PRP*

In January 2020, Smith filed a PRP. This court consolidated Smith's PRP with his direct appeal.

## ANALYSIS

A.     ADMISSIBILITY OF RELATIONSHIP EVIDENCE

Smith argues that the trial court violated his constitutional right to present a defense by excluding evidence of HK's relationship troubles with Jones. We disagree.

1.     Legal Principles

A criminal defendant has a constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719-20, 230 P.3d 576 (2010). This right to present a defense derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Wade*, 186 Wn. App. 749, 763-64, 346 P.3d 838 (2015). There also is a fundamental due process right to present a defense under the Fourteenth Amendment. *State v. Lizarraga*, 191 Wn. App. 530, 551-52, 364 P.3d 810 (2015).

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401; *see also State v. Farnsworth*, 185 Wn.2d 768, 782-83, 374 P.3d 1152 (2016). Evidence that is not relevant is inadmissible. ER 402. "Impeachment evidence is relevant if (1) it tends to cast doubt on the credibility of the person being impeached

and (2) the credibility of the person being impeached is a fact of consequence to the action." *State v. Horn*, 3 Wn. App. 2d 302, 313, 415 P.3d 1225 (2018).

In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019). In *Arndt*, the court found no violation of the right to present a defense when the evidence at issue was not excluded entirely and the defendant "was able to present relevant evidence supporting her central defense theory." *Id.* at 813-14.

We review a trial court's evidentiary rulings for abuse of discretion. *Id.* at 797-98. We review de novo whether an evidentiary ruling violated the defendant's right to present a defense. *Id.*

2.    Analysis

At trial, Smith sought to elicit testimony from HK that she was thinking about leaving her relationship with Jones because he was partying and not coming home. Smith argues that this evidence was relevant to show a motive for HK to fabricate her allegations against him to avoid further conflict with Jones or because she knew that Jones would accuse her of cheating with Smith.

However, Smith's argument that the fact that HK was thinking about leaving Jones because of his behavior gave her a motive to fabricate does not make sense. Smith does not explain why HK's concerns about her relationship with Jones would cause her to fabricate allegations against Smith. The evidence Smith sought to elicit simply is not relevant as impeachment evidence.

Smith references Stamper's testimony that Jones accused HK of cheating. However, Smith's offer of proof did not include asking HK whether Jones had accused her of cheating. In any event, evidence regarding HK's relationship troubles were not excluded completely – Jones's accusation of cheating was admitted into evidence through Stamper. Therefore, Smith was free to argue the fabrication theory he presents on appeal.

We conclude that the trial court did not abuse its discretion in finding that the proffered evidence regarding HK's relationship troubles was not relevant. In addition, we find no constitutional violation. Accordingly, we hold that the trial court did not violate Smith's constitutional right to present a defense.

B.     PROSECUTORIAL MISCONDUCT

Smith argues that the prosecutor engaged in misconduct during rebuttal by improperly mischaracterizing the reasonable doubt standard. We hold that Smith waived this argument by failing to object at trial.

1.     Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). In assessing whether a prosecutor's closing argument was improper, we recognize that the prosecutor has "wide latitude to argue reasonable inferences from the evidence." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).

When the defendant failed to object at trial, the defendant is deemed to have waived any error unless the prosecutor's misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). The defendant must show that (1) no curative instruction would have eliminated the

prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Id.* at 761.

> 2.    Analysis

Smith argues that this statement undermined the presumption of innocence and improperly shifted the burden of proof to the defense to supply a basis for reasonable doubt. However, Smith failed to object to the prosecutor's statement. Therefore, the question is whether the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. *Emery*, 174 Wn.2d at 760-61.

Smith argues that the prosecutor's argument could not have been cured by a proper instruction because it was made at the end of the State's rebuttal and immediately before jury deliberations.[4] But the trial court properly instructed the jury on the presumption of innocence and reasonable doubt standard before closing argument. If Smith had objected, the trial court could have simply referred the jury to that instruction and reminded the jury that argument inconsistent with the instructions should be disregarded. Also, we note that the prosecutor properly articulated the burden of proof on multiple occasions elsewhere in her closing argument.

Accordingly, we hold that Smith waived his prosecutorial misconduct argument.

C.    SAME CRIMINAL CONDUCT AND ANTIMERGER STATUTE

Smith argues that the trial court erred in concluding that his burglary with sexual motivation and indecent liberties convictions did not constitute the same criminal conduct. We disagree.

---

[4] Smith also argues that the resulting prejudice was compounded by the trial court's exclusion of evidence of HK's relationship troubles with Jones. But we hold that the trial court did not err in excluding that evidence.

1.    Legal Principles

In calculating an offender score, the trial court counts a defendant's current and prior convictions. RCW 9.94A.589(1)(a). The offender score for a defendant's current offense includes all other current offenses unless "the court enters a finding that some or all of the current offenses encompass the same criminal conduct." *Id*. "Same criminal conduct" means "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." *Id*. We do not disturb a sentencing court's determination of same criminal conduct unless it abuses its discretion or misapplies the law. *State v. Aldana Graciano*, 176 Wn.2d 531, 533, 295 P.3d 219 (2013).

However, the burglary antimerger statute permits courts to punish an offender for both burglary and offenses committed during the commission of the burglary. RCW 9A.52.050. This statute gives a sentencing judge discretion to punish for burglary even where burglary and an additional offense constitute the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992).

2.    Analysis

Smith argues that the trial court's ruling that the burglary and indecent liberties convictions did not constitute the same criminal conduct was the basis for the court's offender score determination. However, the trial court did not make a same criminal conduct determination. A fair reading of the court's oral ruling compels the conclusion that the court decided to sentence Smith based on the antimerger statute, not on a finding that the two convictions did not constitute the same criminal conduct.

The State argued that the court should exercise its discretion to apply the antimerger statute. Smith argued that the court should exercise its discretion not to apply the antimerger statute. In response, the court stated:

> Well, I did have a chance to review the [antimerger] statute and the cases that were indicated by counsel. It is discretionary with the Court in situations like this where both the substantive crime and the burglary are charged. And looking closely at the information and . . . the testimony that I heard at the time of the trial, *it appears to me that it's appropriate that the matters not merge*, and they be treated as separate criminal conduct.

RP at 376.

In other words, the court stated that the two offenses should be treated as separate criminal conduct under the antimerger statute, not that the offenses did not constitute the same criminal conduct. Therefore, we reject Smith's same criminal conduct argument.

D.    PRP CLAIM

In his PRP, Smith argues that location-tracking information from the Google Maps history in his personal cell phone constitutes newly discovered evidence that undermines the State's theory that he was at HK's home at the time she said he arrived and attacked her. We disagree.

To prevail on a claim of newly discovered evidence, a PRP must show evidence that "(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." *In re Pers. Restraint of Fero*, 190 Wn.2d 1, 15, 409 P.3d 214 (2018) (plurality opinion). The absence of any one of these five factors is fatal to the claim. *Id.*

Here, Smith's Google Maps history is not newly discovered evidence. It was available on Smith's personal cell phone at all times. Smith fails to demonstrate how or why his personal

21

phone was unavailable before trial. He details how he discovered the information after his home was burglarized and the phone was taken from the home. However, he does not explain why this information could not have been discovered earlier with due diligence. Therefore, we deny Smith's PRP.

E.      INTEREST ACCRUAL PROVISION FOR LFOs

Smith argues, and the State concedes, that we should strike the interest accrual provision for nonrestitution LFOs imposed in his judgment and sentence. We agree.

RCW 10.82.090(1) states that no interest will accrue on nonrestitution LFOs after June 7, 2018. But the court nevertheless imposed an interest accrual provision for nonrestitution LFOs. Therefore, we remand for the trial court to strike the interest accrual provision.

CONCLUSION

We affirm Smith's convictions, but we remand for the trial court to strike the interest accrual provision for nonrestitution LFOs from Smith's judgment and sentence.

MAXA, J.

We concur:

SUTTON, A.C.J.

GLASGOW, C.J.

22