IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82773-1-I |
| Respondent, | DIVISION I |
| v. | UNPUBLISHED OPINION |
| CAMERON CROMOGA, | |
| Appellant. | |

DíAz, J. — Of his two convictions, Cameron Cromoga appeals only his conviction of felony violation of a court order, asserting a violation of his right to a unanimous jury because the trial court did not provide a unanimity instruction despite the fact that the State alleged two acts that could have formed the basis for the single charge of that crime without electing which act it relied on. We need not reach whether the trial court erred in failing to provide such a unanimity instruction because, even if it was error, the error was harmless beyond a reasonable doubt. Thus, we affirm.

## I.  FACTS

On January 3, 2020, a court issued a domestic violence no-contact order, effective until January 3, 2024, that prohibited Cromoga's contact with A.O.

Citations and pin cites are based on the Westlaw online version of the cited material.

Based on incidents that took place approximately three months later, the State charged Cromoga with domestic violence assault in the second degree (Count 1), alleging that Cromoga assaulted A.O., his intimate partner, by strangulation. See RCW 9A.36.021(1)(g) (assault by strangulation). The State also alleged domestic violence felony assault in the fourth degree (Count 2) premised on the same factual basis. See RCW 9A.36.041(3)(b) (fourth degree felony assault). The State also charged Cromoga with domestic violence felony violation of a court order (Count 3), alleging that he violated the terms of the January 3, 2020 court order on the date of the alleged assault.[1] See Former RCW 26.50.110 (1) (2019) (violation of a court order). Only Count 3 is challenged herein.

At Cromoga's trial, A.O.'s sister testified that in the early afternoon on March 25, 2020, A.O. unannounced "barged" into the Tacoma-area home she shared with several family members. According to her sister, A.O. was "shaken up," crying "hysterically," and told two of her sisters that Cromoga "put his hands on me." Specifically, A.O. reported that Cromoga choked her with a dog leash, hit her in the face, and pushed her against "the fridge," though whose refrigerator it was was not specified. A.O. had visible injuries, including marks on her neck and arm, and that her mouth was bleeding. A.O.'s sister photographed her injuries and the trial court admitted copies of the photographs at trial.

---

[1]Although the State had asserted additional counts of felony violation of a court order and a charge of witness tampering, it withdrew those charges after it became apparent that A.O. would not testify at trial and the State would be unable to authenticate the evidence supporting the charges.

Because Cromoga had her cellphone and A.O. wanted it back, A.O. asked to borrow her sister's cellphone to call Cromoga. A.O. took the phone into the bathroom. After she finished her call, A.O. left the house without saying goodbye or telling her sisters where she was going.

When A.O.'s sisters realized A.O. was gone, they decided to follow her. After they followed A.O. in her car for about 20 minutes, A.O. pulled over onto the shoulder of the road, and the sisters pulled in behind her. A.O.'s sisters tried to persuade A.O. to return home with them, to no avail. A.O. refused to say where she was going, and the sisters decided to go home without her.

About four hours later, when they had not heard from A.O. since they parted ways on the side of the road, the sisters decided to drive to A.O.'s apartment complex in Federal Way. They observed A.O.'s car in the parking lot, saw that her apartment was dark, but noticed some movement of the blinds. The sisters called 911 and explained that they were concerned for A.O.'s safety.

About an hour and a half later, after 8:30 p.m., several Federal Way Police Department officers responded. The officers tried to persuade A.O. to come out of her apartment, and to ask about her contact with Cromoga and her injuries. Through an unobscured the window, four police officers testified that they observed A.O. and a male person standing shoulder to shoulder in A.O.'s lighted apartment. Another officer testified that he saw Cromoga briefly emerge on a landing area outside A.O.'s apartment. Two officers recognized the male as Cromoga because they had personally interacted with him before. They, and the

3

other officers, had also seen Department of Licensing photographs of both Cromoga and A.O. The other three officers, who had no prior contact with Cromoga, testified that the male figure matched the image and description of Cromoga on his driver's license.

A.O. eventually came out onto the balcony of her apartment, confirmed her identity to the responding officers, and ultimately admitted that Cromoga was with her in the apartment.[2] When asked about her injuries, A.O. first indicated that she had been in a "fight" and refused to say whether Cromoga had inflicted the injuries.[3] She then reported to an officer, and later, to an emergency room physician, that she inflicted injuries on herself by attempting to use her own hands to strangle herself. The emergency room physician testified that A.O.'s injuries were consistent with being strangled by another and concluded that A.O. posed no risk of harm to herself.

A.O. did not provide a written statement to law enforcement and neither A.O. nor Cromoga testified at trial. Cromoga stipulated that he was aware of the January 2020 domestic violence protection order.

Cromoga requested, and the court provided, a jury instruction on fourth degree nonfelony assault, as a lesser-included offense of second-degree assault,

---

[2] Although the trial court initially sustained a defense objection to a police officer's testimony that A.O. eventually admitted that Cromoga was present in her apartment, the officer testified shortly thereafter to the same effect without objection.

[3] The court admitted A.O.'s initial statement about a fight and refusal to answer the question about whether Cromoga inflicted the injuries observed by her sisters and police officers, not as substantive evidence, but for the purpose of showing that A.O. made conflicting statements about how she sustained injuries.

as charged in Count 1.  Cromoga also requested a unanimity instruction, pursuant to State v. Petrich, 101 Wn.2d 566, 683 P.2d 173 (1984) for the felony fourth-degree assault charged in Count 2, seeking to direct the jury that it had to be unanimous as to which act constituted assault.  The court declined to give the instruction, concluding that a unanimity instruction was not needed because the alleged assaultive acts alleged were a continuing course of conduct.  Cromoga did not propose a unanimity instruction as to the court order violation charge.

In closing remarks, the State discussed the court order violation and argued that Cromoga "was with [A.O.]" when he assaulted her and thereby "violated that court order."  The State also maintained that, "[w]hen [Cromoga] was with her in the apartment where multiple officers saw him standing shoulder to shoulder with [A.O.], he violated that order."

The jury convicted Cromoga of felony assault in the fourth degree (Count 2) and felony violation of a court order (Count 3).[4]  The jury also made numerous findings by special verdict, including a finding that A.O. and Cromoga were intimate partners at the time of the charged offenses, that Cromoga had twice been previously convicted for violating provisions of a court order, and that he committed the offenses shortly after being released from incarceration.

---

[4] The jury found Cromoga not guilty of second-degree assault (Count 1), but convicted him of the lesser included offense of misdemeanor fourth-degree assault.  The court granted State's motion to dismiss the misdemeanor assault conviction to avoid a double jeopardy violation.

5

The court imposed standard range sentences of concurrent 60-month terms and imposed an order prohibiting contact with A.O. for 5 years.[5] Cromoga appeals.

## II. ANALYSIS

Cromoga challenges his conviction of violation of a court order and claims he was deprived of his right to a unanimous jury verdict. It is undisputed that the State relied on evidence of two potential violations of the court order based on A.O.'s disclosures to her sisters and police officers' later observation of Cromoga in A.O.'s apartment, and that no unanimity instruction was given for this charge. Cromoga thus contends that some jurors may have relied on his (first) contact with A.O. at the time of the assault to convict, while others may have relied on evidence of a later (second) contact at A.O.'s apartment, resulting in a lack of unanimity as to the underlying criminal act.

According to the State, the evidence demonstrated that Cromoga's contacts with A.O. on March 25, 2020 were part of a continuing course of conduct, which eliminated the need for a unanimity instruction. This is so, that State argues, because the two violations involved the same parties and the same location (A.O.'s apartment), the time separating the two incidents was "relatively short," and Cromoga acted with the same purpose.

The State further argues that any failure to provide a unanimity jury instruction was harmless beyond a reasonable doubt. We agree as to this latter

---

[5] Cromoga's standard range sentence, based on an offender score of 18, was equivalent to the 60-month statutory maximum sentence for each conviction. The court declined to impose exceptional sentences proposed by both the State and the defense.

point and thus need not reach the former, whether it was error for the Court not to provide a unanimity instruction.

The failure to provide a required unanimity instruction when required is constitutional error. See State v. Bobenhouse, 166 Wn.2d 881, 893, 214 P.3d 907 (2009). When a jury is not instructed that it must be unanimous in a situation where such an instruction is required, "the jury verdict will be affirmed only if that error was harmless beyond a reasonable doubt." State v. Camarillo, 115 Wn.2d 60, 64, 794 P.2d 850 (1990). We presume the error was prejudicial. State v. Kitchen, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). This presumption may be overcome "only if no rational juror could have a reasonable doubt as to any of the incidents alleged." State v. Coleman, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007).

In this case, because the jury was unanimous in convicting Cromoga of assaulting A.O. on March 25, 2020 (which Cromoga does not challenge), there must have been unanimity that Cromoga had prohibited contact with A.O. in the first meeting. Her presence was obviously a predicate to that crime. Stated otherwise, no rational trier of fact could convict for assault but find that prohibited contact did not occur. See Kitchen, 110 Wn.2d at 411.

Under these particular circumstances, there is no uncertainty about the unanimous nature of the jury's verdict as to Count 3 with regard to the first meeting, regardless of whether or not the conviction was "based solely on [A.O.'s] excited utterances," whether the evidence definitively established "when and where that

assault occurred" and whether there was conflicting evidence about how A.O. sustained her injuries.

As to that second meeting, the officers' testimony that they observed Cromoga in A.O.'s apartment was in fact uncontroverted. There was no evidence contradicting (a) the testimony of the officers who recognized Cromoga from prior contacts and clearly saw his face; (b) the testimony of other officers who observed a male who appeared to match the description and photograph on Cromoga's driver's license; or (c) the testimony that A.O. eventually admitted that Cromoga was present in her apartment. And, as explained, Cromoga (d) stipulated to his eight prior convictions for domestic violence misdemeanor violations of a court order. Based on the above, any rational trier of fact would have found that Cromoga and A.O. were together at the second meeting and, thus, the State proved both alleged acts beyond a reasonable doubt. See State v. Espinoza, 14 Wn. App.2d 810, 815-16, 474 P.3d 570 (2020) (when a trial court fails to properly instruct on jury unanimity, the error is harmless "only when all rational triers of fact would find that each alleged act was proved beyond a reasonable doubt.").

Finally, Petrich itself is distinguishable. There, "the evidence indicated multiple instances of conduct which could have been the basis for each [sexual assault] charge. The victim described some incidents with detail and specificity. Others were simply acknowledged, with attendant confusion as to date and place, and uncertainty regarding the type of sexual contact that took place." Petrich, 101 Wn.2d at 573. Here, there were only two potential instances for

one charge, and the evidence was much more straightforward, nearly entirely uncontroverted, and, thus, the error was harmless beyond a reasonable doubt.

We affirm.

Díaz, J.

WE CONCUR:

Birk, J.

Andrus, C.J.